IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


GREG GIVENS,

        Plaintiff,

v.                                      Civil Action No. 5:08CV25
                                                        (STAMP)
MAIN STREET BANK, WILLIAM CRISWELL,
REBECCA RANDOLPH, UNITED BANK-WHEELING,
UNITED BANK-DUNBAR, ROSELYN J. CANTINI,
OHIO COUNTY PROSECUTOR OFFICE
and WHEELING POLICE DEPARTMENT,
individually and collectively,

        Defendants.


**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR
PRELIMINARY RESTRAINING ORDER AND
FOR TEMPORARY AND PERMANENT INJUNCTION,
DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT,
GRANTING DEFENDANTS UNITED BANK
AND ROSELYN J. CANTINI'S
MOTION TO DISMISS,
GRANTING DEFENDANT OHIO COUNTY PROSECUTOR'S
MOTION TO DISMISS,
GRANTING IN PART AND DENYING IN PART AS MOOT
DEFENDANTS MAIN STREET BANK AND REBECCA RANDOLPH'S
MOTION FOR A MORE DEFINITE STATEMENT AND
DENYING AS MOOT DEFENDANTS UNITED BANK AND ROSELYN J. CANTINI'S
MOTION FOR LEAVE TO TAKE ORAL DEPOSITION OF PLAINTIFF**


I.  Procedural History

        On January 14, 2008, the plaintiff, Greg Givens, proceeding

pro se,[1] filed a complaint in which he alleges that the above-named

defendants have committed various acts which give rise to claims

_____

        [1]"Pro se" describes a person who represents himself in a court
proceeding without the assistance of a lawyer.  Black's Law
Dictionary 1237 (7th ed. 1999).

for constitutional and civil rights violations; abuse of process and breach of express duties; malicious prosecution; unlawful actions regulated under federal law; and endangerment of and injury to plaintiff and infliction of physical and emotional distress. In his complaint, the plaintiff states that he is seeking declaratory relief and a preliminary and permanent injunction to prevent the defendants from engaging in certain future conduct. On the same date as he filed his complaint, the plaintiff also filed a motion for a preliminary restraining order and for a temporary and permanent injunction.[2] This motion, which the plaintiff requests be adjudicated without an evidentiary hearing or oral argument, requests the same injunctive relief as does the plaintiff's complaint.

Subsequently, the plaintiff filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. In his motion for summary judgment, the plaintiff asks this Court to grant judgment in his favor because at the time the motion was filed, the defendants had not filed an answer to the plaintiff's complaint. Accordingly, this Court construes the plaintiff's pleading as a motion for default judgment pursuant to Federal Rule of Civil Procedure 55.

---

[2]This motion was styled, "Complaint for Preliminary Restraining Order and for Temporary and Permanent Injunction."

In response the complaint, defendants Main Street Bank and Rebecca Randolph filed a motion for a more definite statement, which was joined by defendants United Bank, Roselyn Cantini, William Criswell, and the Wheeling Police Department. Also in response to the plaintiff's complaint, defendants United Bank and Roselyn Cantini jointly filed a motion to dismiss. Separately, defendant Office of the Prosecuting Attorney, Ohio County filed a motion to dismiss. The plaintiff filed a single response to the defendants' various motions for more definite statement and motions to dismiss, to which defendants United Bank and Roselyn Cantini filed a joint reply, and defendant Office of the Prosecuting Attorney, Ohio County filed a separate reply. No other defendants replied.

Defendants United Bank and Roselyn Cantini filed a joint response to the plaintiff's motion for a preliminary injunction and temporary restraining order. Defendant Office of Prosecuting Attorney, Ohio County filed a separate response. No other defendants filed a response.

All of the defendants have filed responses to the plaintiff's motion for summary judgment. Defendants United Bank and Roselyn Cantini jointly responded, as did defendants Main Street Bank and Rebecca Randolph. Likewise, defendants William Criswell and Wheeling Police Department filed a joint response. Defendant

Office of Prosecuting Attorney, Ohio County filed a separate response. The plaintiff did not file a reply.

Finally, defendants United Bank and Roselyn Cantini have filed a motion for leave to take oral deposition of the plaintiff.

This Court has carefully reviewed the parties' motions and related memoranda, and because plaintiff is <u>pro se</u>, this Court has liberally construed plaintiff's pleadings. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519 (1971) (holding <u>pro se</u> complaint to less stringent standards than formal pleadings drafted by lawyers).

After considering the briefs submitted by the parties, and the applicable law, this Court finds that the plaintiff's motion for a preliminary injunction must be denied, the plaintiff's motion for summary judgment must be denied, the motion to dismiss by defendants United Bank and Roselyn J. Cantini must be granted, the motion to dismiss by defendant Ohio County Prosecutor's Office must be granted, the motion for a more definite statement by defendants Main Street Bank and Rebecca Randolph must be granted in part and denied in part as moot, and the motion for leave to take oral deposition of plaintiff must be denied as moot.

## II.  <u>Facts</u>

The plaintiff alleges that the defendants' acts or omissions caused the plaintiff to be abducted from him home, stripped of his clothing, and held without charge for an unspecified number of weeks.  He further alleges that the defendants' acts and omissions

caused the plaintiff to be "subjected to unethical medical examinations and injections" and to be held against his will. According to the plaintiff, the defendants "are engaged in the direct and unlawful conspiracy to deprive [him] of his civil and constitutional rights and privileges."

In response to the motion for a more definite statement, filed by defendants Main Street Bank and Rebecca Randolph and joined by defendants United Bank, Roselyn Cantini, William Criswell, and the Wheeling Police Department, the plaintiff claims that defendants Main Street Bank and Rebecca Randolph engaged in blackmail and criminal coercion to collect money from him. Specifically, he states that on July 12, 2007, Randolph locked the plaintiff inside the Main Street Bank, waved unidentified documents in front of his face, and threatened to falsely prosecute and otherwise "ruin" him if he failed to pay the money so that the bank could "cover up . . . from implication from government officials."

The plaintiff's response further claims that on January 2, 2008, he witnessed an oral exchange between an official of Main Street Bank and assistant county prosecutor Shawn Turak which occurred near the lobby of the Ohio County Magistrate Court. In that alleged exchange, which the plaintiff claims involved a blackmail scheme between Main Street and the prosecutor's office, Turak, acting on behalf of defendant the Office of Prosecuting

Attorney, Ohio County, purportedly said to the bank official: "Let me know if we get the money from [the plaintiff]."

In addition to the above allegations, the plaintiff states that on January 24, 2001, defendant Roselyn Cantini made a "mortal threat" upon the plaintiff's life. According to the plaintiff, defendant Cantini told the plaintiff that if he did not pay her an unspecified amount of money, she would see that the plaintiff was "destroyed" and that he and his family were "ruined." The plaintiff also alleges that defendant United Bank purported to act as his agent in a commercial transaction which bound the plaintiff to an insurance contract to which the plaintiff did not intend or desire to be obligated. Further, according to the plaintiff, defendants Cantini and United Bank have engaged in an orchestrated plan to extort money from him by accusing him of fraud, making threatening and harassing telephone calls, manipulating his accounts, refusing to accept payment on a loan, and continuing to hold the title to a vehicle that the plaintiff claims to own.

Based upon these allegations, the plaintiff seeks a temporary restraining order and a preliminary and permanent injunction to bar the defendants from "Acts which harass, vex, and annoy Plaintiff, his family and business; Acts of threat of prosecution, and coercion against Plaintiff and his civil and religious rights; Acts that interfer[e] with the use or occupation of the property of Plaintiff; from taking possession of, or attempting to take

possession of, the property of Plaintiff; Acts which may endanger or are harmful to Plaintiff's reputation and personal freedoms; Acts or feats that will physically harm Plaintiff or his family; And why such other and further order should not be made as the court may deem proper."

Separately, the plaintiff has filed a motion for summary judgment on his complaint, and certain of the defendants filed motions to dismiss. This Court will first address the plaintiff's motion for temporary restraining order and for preliminary and permanent injunction, after which this Court will discuss the plaintiff's motion for summary judgment, followed by the motions to dismiss.

### III. Applicable Law

#### A. Preliminary Injunction

In Blackwelder Furniture Co. v. Seilig Manufacturing Co., Inc., 550 F.2d 189 (4th Cir. 1977), Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353 (4th Cir. 1991) and Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802 (4th Cir. 1991), the Fourth Circuit set forth the equitable factors that a district court must consider when determining whether a temporary restraining order or preliminary injunction should issue. See also C/R TV Cable, Inc. v. Shannondale, Inc., 792 F. Supp. 1018, 1021-22 (N.D. W. Va. 1992). The four factors which must be considered in granting a preliminary injunction in the Fourth Circuit are:

> (1) the likelihood of irreparable harm to the plaintiff
> if the preliminary injunction is denied, (2) the
> likelihood of harm to the defendant if the requested
> relief is granted, (3) the likelihood that the plaintiff
> will succeed on the merits, and (4) the public interest.

Direx Israel, 952 F.2d at 812 (citing Rum Creek, 926 F.2d at 859).

Additionally, the "plaintiff bears the burden of establishing that

each of these factors supports granting the injunction." Id.

(quoting Technical Publishing Co. v. Lebhar-Friedman, Inc., 729

F.2d 1136, 1139 (7th Cir. 1984)).

The Direx Israel court emphasized that "[t]he 'likelihood of

irreparable harm to the plaintiff' is the first factor to be

considered in this connection." 952 F.2d at 812. If the plaintiff

makes "a 'clear showing' of irreparable injury absent preliminary

injunctive relief," a district court must then balance the

likelihood of irreparable harm to the plaintiff without an

injunction against the likelihood of harm to the defendant with an

injunction. Id.; see also Blackwelder, 550 F.2d at 195. Then, if

a decided imbalance of hardship appears in the plaintiff's favor,

the plaintiff need not show a likelihood of success; plaintiff need

only show that grave or serious questions are presented by

plaintiff's claim. Blackwelder, 550 F.2d at 195-96; see also James

A. Merritt & Sons v. Marsh, 791 F.2d 328, 330 (4th Cir. 1986)

("when the balance of harm decidedly favors the plaintiff, he is

not required to make a strong showing of a likelihood of success

. . . ."). The district court should also consider the public

interest.  See Blackwelder, 550 F.2d at 196.  However, as the
Blackwelder court concluded "[t]he two more important factors are
those of probable irreparable injury to plaintiff without a decree
and of likely harm to the defendant with the decree."  Id.

The issuance of a preliminary injunction is committed to the
sound discretion of the district court.  Conservation Council of
North Carolina v. Costanzo, 505 F.2d 498, 502 (4th Cir. 1974).  If
a preliminary injunction is granted, the order granting the same
must "set forth the reasons for its issuance; shall be specific in
terms; [and] shall describe in reasonable detail, and not by
reference to the complaint or other document, the act or acts to be
restrained."  See Fed. R. Civ. P. 65(d); see also Fed. R. Civ. P.
52(a) ("in granting or refusing interlocutory injunctions the court
shall [ ] set forth the findings of fact and conclusions of law
which constitute the grounds of its action").  However, the grant
of preliminary injunctive relief is "an extraordinary remedy
involving the exercise of a very far-reaching power, which is to be
applied 'only in [the] limited circumstances' which clearly demand
it."  Direx Israel, 952 F.2d at 811 (quoting Instant Air Freight
Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989)).

Moreover, the Fourth Circuit Court of Appeals has
distinguished requests for preliminary injunctive relief that
"preserve[s] the status quo until the rights of the parties can be
fairly and fully investigated and determined by strictly legal

proofs according to the principles of equity" from requests for mandatory preliminary injunction that do not preserve the status quo. See Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980), quoting Meiselman v. Paramount Film Distributing Corp., 180 F.2d 94, 97 (4th Cir. 1950). Mandatory preliminary injunctions "should be granted only in those circumstances when the exigencies of the situation demand such relief." Id.

B.  Default Judgment

Prior to obtaining a default judgment, a party must seek an entry of default under Federal Rule of Civil Procedure 55(a). Under Rule 55(a), an entry of default is appropriate "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend. . ." Once default is entered by the clerk, the party may seek a default judgment under Rule 55(b)(1) or (2), depending on the nature of the relief sought. If the plaintiff's claim is for "a sum certain" or a "a sum which can by computation be made certain," the plaintiff may seek a default judgment from the clerk under Rule 55(b)(1). However, in cases in which the plaintiff seeks a form of relief other than liquidated damages, Rule 55(b)(2) requires plaintiff to seek a default judgment from the court.

C.  Motion to Dismiss

In assessing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept

the factual allegations contained in the complaint as true. Advanced Health Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Dismissal is appropriate pursuant to Rule 12(b)(6) only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'" Id. at 143-44 (quoting Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)); see also Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

Stated another way, it has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. Id. § 1356, at 298. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Id. § 1357, at 304, 310.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in very limited circumstances. <u>Rogers</u>, 883 F.2d at 325. A dismissal under Rule 12(b)(6) is granted only in cases in which the allegations raised in the complaint clearly demonstrate that the plaintiff does not have a claim and that no set of facts would support the plaintiff's claim. 5A Wright & Miller, <u>supra</u> § 1357, at 344-45.

## IV. <u>Discussion</u>

### A. <u>Preliminary Injunction</u>

#### 1. <u>Irreparable Harm to Plaintiff Absent an Injunction</u>

In order for plaintiff to prevail on his motion for preliminary injunction, plaintiff must first establish that he is likely to suffer irreparable harm if injunctive relief is not granted. <u>See</u> <u>Direx Israel</u>, 952 F.2d at 812. Moreover, "a cogent showing of irreparable harm is an indispensable condition of such intervention." <u>See</u> <u>Sears, Roebuck & Co.</u>, 473 F.2d at 93. The required "irreparable harm" must be "neither remote nor speculative, but actual and imminent." <u>Direx Israel</u>, 952 F.2d at 812 (quoting <u>Tucker Anthony Realty Corp. v. Schlesinger</u>, 888 F.2d 969, 975 (2d Cir. 1989)).

In this case, plaintiff has made no cogent showing of actual and imminent irreparable harm. His pleadings allege vague, speculative, and generalized harm and fail to set forth any facts to support a conclusion that he will suffer actual, imminent, and

irreparable harm.  Accordingly, this factor weighs against granting an injunction or temporary restraining order in this case.

> 2.    <u>Irreparable Harm to Defendants</u>

Because the plaintiff has not made a clear showing that he will suffer irreparable harm absent the issuance of an injunction, this Court need not consider whether the defendant will suffer irreparable harm if an injunction were to issue.

> 3.    <u>Likelihood of Success on the Merits</u>

The second factor to consider, then, is whether the plaintiff has demonstrated that he is likely to succeed on the merits of his claims.  This he has failed to do.  The plaintiff has offered no evidence to support a conclusion that the conduct of which he complains warrants injunctive relief, nor for that matter that the defendants have even engaged in the alleged conduct.  Therefore, this factor weighs heavily against granting injunctive relief.

> 4.    <u>Public Interest</u>

The final <u>Blackwelder</u> prerequisite that a plaintiff must show is that the requested injunctive relief is in the "public interest."  Nothing in the plaintiff's pleadings appears to argue that an injunction is in the public interest.  Because the plaintiff has not even attempted to demonstrate that the issuance of an injunction would be in the public interest, he has failed to meet this prong of the <u>Blackwelder</u> test.  Accordingly, this factor

weighs against granting the plaintiff's requested injunctive relief.

B.  Plaintiff's Motion for Summary Judgment

In his motion for summary judgment, which this Court construes as a motion for default judgment,[3] the plaintiff argues that judgment should be entered against the defendants because they failed to file their answers within twenty days of the filing of the complaint. Pursuant to Federal Rule of Civil Procedure 12(a), a defendant who has not waived service under Rule 4(d) must serve an answer within twenty days after being served with the summons and complaint, unless another time is specified by a different subpart to Rule 12 or by federal statute. Fed. R. Civ. P. 12(a)(1). Rule 12(a)(4) alters the deadline in cases where, as here, a motion for a more definite statement is filed pursuant to Rule 12(e), or motion to dismiss is filed pursuant to Rule 12(b):

(4)  Effect of a motion.

Unless the court sets a different time, serving a motion under this rule alters these periods as follows:

(A)  if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 10 days after notice of the court's action; or

---

[3]Although this pleading is styled as a motion for summary judgment, the relief the plaintiff seeks properly falls under the purview of Federal Rule of Civil Procedure 55, which governs entry of default and default judgment. This Court therefore construes the plaintiff's motion for summary judgment as a motion for default judgment.

(B) if the court grants a motion for a more
definite statement, the responsive pleading must be
served within 10 days after the more definite statement
is served.

Fed. R. Civ. P. 12(a)(4).

Here, the summonses and complaint were served on defendants
Main Street Bank, United Bank, Rebecca Randolph, Wheeling Police
Department, William Criswell, and the Office of Prosecuting
Attorney, Ohio County, on March 4, 2008. On the same date, Roselyn
Cantini, who has not been served with process in this action,
appeared, by counsel, on March 4, 2008. Thus, the date by which
these defendants would be required to file an answer under Rule 12
was March 24, 2008. However, on March 13, 2008, United Bank and
Roselyn Cantini filed a Rule 12(b)(6) motion to dismiss for failure
to state a claim upon which relief can be granted. On March 18,
2008, Main Street Bank and Rebecca Randolph filed a motion for a
more definite statement pursuant to Rule 12(e), which United Bank,
Roselyn Cantini, William Criswell, and Wheeling Police Department
joined on the same date. Also on March 18, 2008, the Office of
Prosecuting Attorney, Ohio County filed a motion to dismiss
pursuant to Rule 12(b)(6) for failure to state a claim upon which
relief can be granted. The period for filing responsive pleadings
to the plaintiff's complaint is therefore tolled under Rule
12(a)(4), and the time for filing such responsive pleadings will
depend upon this Court's disposition of the defendants' various
motions. Because the defendants have complied with the time

15

requirements imposed by Rule 12, the plaintiff's motion for summary judgment, which this Court construes as a motion for default judgment, will be denied. Even if this Court were to construe the defendant's motion as one seeking summary judgment, this Court would deny the motion as premature because no discovery has taken place, as provided under Federal Rule of Civil Procedure 56(c), and, as noted below, there is a desire to take the plaintiff's deposition.

C. Motions to Dismiss

    1. United Bank and Cantini's Motion to Dismiss

        a. Constitutional and Civil Rights Claims

In Counts I and VI of his complaint, the plaintiff alleges that the defendants have deprived him of his civil and constitutional rights in violation of 42 U.S.C. § 1983 because he was abducted or arrested and detained for a number of weeks without charge, deprived of his clothing, branded a fugitive from justice and subjected to unethical medical examinations and injections. Section 1983 provides that "[e]very person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizens of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. To be actionable under § 1983, the

conduct alleged to have deprived a plaintiff of a federal right must be "fairly attributable to the state." Lugar v. Edmonson Oil Co., 457 U.S. 922 (1982). Thus, a private party not acting under color of law is free from § 1983 liability. See Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982).

However, a private party who conspires with a state actor to violate a person's civil or constitutional rights may, under very limited circumstances, be subject to liability under § 1983. Hassemi v. Corporation of Ranson, 170 F. Supp. 2d 626, 634 (N.D. W. Va. 2001). "[T]o sustain such a claim, the plaintiff must allege facts showing an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right." Id.

Defendants United Bank and Cantini are not state actors. Therefore, to sustain a claim pursuant to § 1983, the plaintiff must show that there was a meeting of the minds between these defendants and a state actor to deprive the plaintiff of his civil and constitutional rights. At most, in paragraph 15 of his reply to the motion to dismiss, the plaintiff alleges that Cantini made threats of extortion which implied influence over state actions. "I can influence judges and prosecutors." (Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss; Defs.' Mot. for More Definite Statement at

5.)[4]  These allegations, even if they were proven to be true, in no way suggest that United Bank or Cantini, or both, reached an understanding with a state official to deprive the plaintiff of his civil or constitutional rights, nor has the plaintiff specified any act or conduct by them that caused or contributed to the events that occurred on or about November 25, 2007, which the plaintiff alleges violated his civil and constitutional rights.  Thus, to the extent that the plaintiff asserts that defendants United Bank and Cantini acted directly to violate his rights, his claims must fail.  Accordingly, Counts I and VI must be dismissed insofar as they pertain to United Bank and Cantini.

        b.   Statutory Claims

    Count IV of the plaintiff's complaint states a cause of action for "Unlawful Actions Regulated under Federal Law."  In this count, the plaintiff alleges that the defendants have violated various federal statutes.  Although the plaintiff invokes The Fair Credit Billing Act, the Fair Credit and Charge Card Disclosures Act of 1988, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Fair Debt Collection Practices Act, and the False Statements Accountability Act of 1996, his complaint fails to specify which defendants he contends have violated which statutes,

_____

[4]Paragraph 17 alleges anonymous threats made which included "such key words . . . as . . . 'judicial branch,' 'bank,' 'Ohio,' 'county prosecutor,' and 'court clerk's age.'"  Nothing in plaintiff's allegations links there alleged anonymous threats to defendants.

and what conduct any defendants have undertaken in violation of any given statute.

To the extent that the plaintiff alleges United Bank and Cantini have violated any of these statutes, these defendants claim that, as to them, all claims arising under any of these statutes are either without merit or time-barred or both. According to United Bank and Cantini, the only connection between United Bank and the plaintiff is that United Bank "holds the certificate of title to a 1987 model Chevrolet Camaro automobile as collateral for the repayment of a promissory note owed by the plaintiff to United, and that there has been no contact whatsoever between United and the plaintiff of any kind since calendar year 2005." The plaintiff offers no facts to contradict this contention.

The Fair Credit Billing Act protects consumers against inaccurate postings to credit card accounts. Under this statute, a cardholder contesting billing errors must provide notice of the alleged errors within sixty days after the statement in which the challenged charge appears. <u>See</u> 15 U.S.C. § 1666(a); 12 C.F.R. § 226.13(b)(1). Because the plaintiff does not appear to dispute United's contention that the only transaction between it and the plaintiff concerned a promissory note on a motor vehicle, any claim against defendants United and Cantini for violating the Fair Credit Billing Act lacks merit.

Similarly, an action pursuant to the Fair Credit and Charge Card Disclosure Act of 1988 must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). In light of the absence of any alleged act or conduct by United Bank or Cantini during the one-year period before plaintiff filed the complaint, the plaintiff's claims under the Fair Credit and Charge Card Disclosure Act, even assuming this statute is properly invoked, are time-barred as to United Bank and Cantini.

The Fair Credit Reporting Act protects debtors from inaccurate information provided by creditors to credit reporting agencies and requires that any claims for violations of this statute be brought within two years from the date a plaintiff discovers that a violation has occurred, or within five years from the date the violation was alleged to have occurred. 15 U.S.C. § 1681p. The plaintiff's complaint fails to allege any facts to support a claim that defendants United and Cantini have violated this statute or that the claims have been brought within the time prescribed by the statute. Accordingly, the plaintiff's claim under the Fair Credit Reporting Act must be dismissed as to defendants United and Cantini.

Under the Equal Credit Opportunity Act, a creditor may not make credit decisions based upon certain discriminatory factors. A claim under this statute must be brought within two years from the date of the alleged violation. 15 U.S.C. § 1691e(f). In this

action, defendants United and Cantini contend that the only transaction between them was a loan awarded, not denied. The plaintiff has offered no objection to this assertion. Thus, the Equal Credit Opportunity Act would appear to be inapplicable to United and Cantini. Further, inasmuch as the last contact between the plaintiff and defendants United and Cantini occurred in 2005, and the plaintiff did not file his complaint until January 14, 2008, the plaintiff's claim under this statute is time-barred.

The Fair Debt Collection Practices Act, which regulates the practice of debt collection, similarly prescribes a statutory limit on claims brought for alleged violations of that statute. Pursuant to 15 U.S.C. § 1692f(d), such actions must be filed within one year of the date of the alleged violation. This claim, too, then is time-barred as to defendants United and Cantini, and must, therefore, be dismissed.

Finally, the plaintiff has invoked the False Statements Accountability Act of 1996. This statute imposes criminal liability for knowingly making a false statement in certain governmental proceedings. 18 U.S.C. §§ 1001, 1515 and 6005; 28 U.S.C. § 1365. Violation of this statute, however, provides for no civil cause of action. Federal Sav. and Loan Ins. Corp. v. Reeves, 816 F.2d 130, 138 (4th Cir. 1987). Therefore, the plaintiff's claims under the False Statements Accountability Act must be dismissed.

For the reasons set forth above, this Court finds that Counts I, IV, and VI against defendants United Bank and Roselyn Cantini must be dismissed.

c.  State Law Causes of Action

Defendant Roselyn Cantini is also named in Count V, which raises a cause of action for "Endangerment of and Injury to Plaintiff; Infliction of Physical and Emotional Distress."[5]  Having determined that the plaintiff's federal claims against defendants United and Cantini must dismissed, this Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) for the plaintiff's state law claim.  Accordingly, Count V as to defendants United and Cantini will be also be dismissed.  Because no other counts remain against defendants United Bank and Cantini, they must be dismissed as parties to this action.

2.  Motion to Dismiss by the Office of Prosecuting Attorney, Ohio County

Defendant Office of the Prosecuting Attorney, Ohio County ("Ohio County Prosecutor's Office" or "OCPO"), is named in Count I ("Intentional Interference with Plaintiff's Civil and Constitutional Rights"); Count II ("Abuse of Process; Breach of Express Duties"); and Count III ("Malicious Prosecution").  Count V alleges "Endangerment of and Injury to Plaintiff; Infliction of

_____

[5]Roselyn J. Cantini is the defendant identified by name in Count V; however, Count V also appears to allege this claim generally against all of the defendants in this action.

Physical and Emotional Distress," which seems to raise a claim against all of the defendants, including the Ohio County Prosecutor's Office. Count VI seeks a declaratory judgment that his civil and constitutional rights have been violated and that he is entitled to relief under § 1983. In essence, the plaintiff alleges that defendant OCPO improperly prosecuted a criminal complaint against the plaintiff in conspiracy with others. Defendant OCPO seeks dismissal of the complaint against it for the plaintiff's failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). According to defendant OCPO, the plaintiff was charged in state court with forgery in the Magistrate Court of Ohio County, West Virginia. Subsequently, those charges were dropped, without prejudice, so that the matter could be presented to the grand jury of Ohio County. On or about January 14, 2008, the grand jury returned an indictment against the plaintiff in this action for uttering, uttering a forged public record, and fraudulent schemes.

Defendant OCPO argues that the plaintiff's complaint must be dismissed under Rule 12(b)(6) because any claims concerning improper and conspiratorial prosecution of the criminal action against the plaintiff are legally deficient, asserting absolute prosecutorial immunity, or, alternatively, qualified immunity.

a. <u>Prosecutorial Immunity</u>

Defendant OCPO contends that its must be dismissed from this suit because the prosecutor is entitled to absolute immunity. As support for this proposition, OCPO cites <u>Imbler v. Pachtman</u>, 424 U.S. 409 (1976). There, the United States Supreme Court held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." <u>Id.</u> at 431. In <u>Lyles v. Sparks</u>, 79 F.3d 372, 377 (4th Cir. 1996), the United States Court of Appeals for the Fourth Circuit found that absolute immunity extends to the presentation of the government's case before the grand jury.

Absolute prosecutorial immunity is limited to the initiation and prosecution of a criminal case. <u>See</u> <u>Imbler</u>, 424 U.S. at 430-31. In <u>Imbler</u>, the Court expressly left open the question of whether absolute immunity applies to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of an advocate." <u>Id.</u> When performing investigative functions, a prosecutor is entitled only to qualified immunity. <u>Ehrlich v. Giuliani</u>, 910 F.2d 1220, 1222 (4th Cir. 1990). Qualified immunity generally applies "to actions extraneous to the judicial process." <u>Id.</u> at 1223 n.3.

In response to defendant OCPO's motion to dismiss and to the motion for a more definite statement, the plaintiff alleges that he

overheard a conversation between the assistant prosecuting attorney and an unidentified person, whom the plaintiff believes to be an employee of Main Street Bank, in which the assistant prosecuting attorney stated, "let me know if we get the money from [the plaintiff]." According to the plaintiff, this statement provides evidence of a conspiracy to deprive the plaintiff of his civil and constitutional rights. In reply, the defendant states that the conversation concerned the payment of restitution by the criminal defendant--the plaintiff in this action--and that the assistant prosecutor properly acted within her duties as an advocate of the state by requesting that the victim keep the prosecutor apprised of any restitution payments made.

This Court finds that defendant OCPO's conduct fell within her duties as an advocate of the state, and, in light of the plaintiff's complaint that he has been deprived of his civil and constitutional rights resulting from an allegedly improper prosecution, the Prosecuting Attorney, Ohio County is entitled to absolute prosecutorial immunity under Imbler. See Imbler, 424 U.S. at 431. Even if the assistant prosecuting attorney's statement falls outside the scope of her advocacy duties, which this Court does not find, the claims against defendant OCPO must nevertheless be dismissed because, as discussed below, this defendant is entitled to qualified immunity.

b.  <u>Qualified Immunity</u>

The qualified immunity defense protects government officials acting within the scope of their authority "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). "Only if a court determines that the plaintiff has alleged a violation of a right clearly established at the time the actions occurred should it proceed to determine whether a reasonable person in the official's position would have known that his actions violated that right." <u>DiMeglio v. Haines</u>, 45 F.3d 790 (4th Cir. 1995). Here, the only conduct the plaintiff alleges that defendant OCPO has undertaken which could conceivably not be protected by absolute immunity, as discussed above, is the purported conversation between the prosecuting attorney and an unidentified employee of Main Street Bank wherein the prosecuting attorney stated, "let me know if we get the money from [the plaintiff]." Assuming arguendo that this statement does not fall within the prosecuting attorney's advocacy duties on behalf of the state, this Court finds that the prosecutor's comment--without more--did not violate the plaintiff's constitutional rights. Even if it did violate the plaintiff's constitutional rights, a reasonable person in the prosecutor's position would not have known that asking the victim of an alleged crime to keep the OCPO

apprised of any restitution payments by the criminal defendant violated the criminal defendant's constitutional rights. For these reasons, Counts I and VI of the plaintiff's complaint must be dismissed against defendant OCPO.

        c. <u>State Law Claims</u>

Defendant OCPO is also named in Count II, which alleges a cause of action for "Abuse of process; Breach of Express Duties, and Count III, which alleges a cause of action for "Malicious Prosecution." Additionally, although he does not name OCPO in Count V, the plaintiff makes a general allegation against all defendants for "Endangerment of and Injury to Plaintiff; Infliction of Physical and Emotional Distress." The plaintiff cites no federal statutory violations in these claims. Accordingly, this Court construes them as state law claims. Having determined that the plaintiff's federal claims against defendant Office of the Prosecuting Attorney, Ohio County must be dismissed, this Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) for the plaintiff's state law claims. Accordingly, Counts II, III, and V as to defendant OCPO will also be dismissed. Because no other counts remain against this defendant, the Office of the Prosecuting Attorney, Ohio County must be dismissed as a party to this action.

D.   Motion for a More Definite Statement and Motion for Leave to
Take Oral Deposition

Also pending before this Court are a motion for a more definite statement by defendants Main Street Bank and Rebecca Randolph, which defendants William Criswell and Wheeling Police Department have joined.  On April 22, 2008, the plaintiff filed a response to this motion.  In his response, the plaintiff stated more specifically the alleged conduct by Main Street Bank and Rebecca Randolph that the plaintiff believes give rise to his claims against them.  He does not, however, provide a more definite statement as to any conduct by defendants Criswell or Wheeling Police Department that he believes give rise to his claims. Accordingly, this Court will grant the defendants' motion for a more definite statement insofar as it pertains to defendants William Criswell and Wheeling Police Department, and will deny as moot the motion insofar as it pertains to defendants Main Street Bank and Rebecca Randolph.

Finally, this Court addresses the pending motion by defendants United Bank and Cantini for leave to take the plaintiff's deposition, pursuant to Federal Rule of Civil Procedure 30(a), before the parties hold their initial planning meeting pursuant to Federal Rule of Civil Procedure 26(f).  The defendants further ask that any such deposition be presided over by this Court or by a magistrate judge or other discovery referee to be appointed by the

Court.  Even if the course of action suggested in this motion might be well taken, this Court has found that the parties making this request must be dismissed from this action, and no other parties have sought to join in the motion.  Accordingly, this Court finds that the motion for leave to take the plaintiff's deposition under controlled conditions before the parties hold their Rule 26 planning conference must be denied as moot.

## V.  Conclusion

For the reasons stated above, the plaintiff's motion for preliminary restraining order and for temporary and permanent injunction is DENIED; the plaintiff's motion for summary judgment, which this Court construes as a motion for default judgment, is DENIED; defendants United Bank and Roselyn J. Cantini's motion to dismiss is GRANTED; defendant Ohio County Prosecutor Office's motion to dismiss is GRANTED; defendants Main Street Bank and Rebecca Randolph's motion for a more definite statement is GRANTED IN PART and DENIED IN PART AS MOOT.  Specifically, defendants Main Street Bank and Rebecca Randolph's motion for a more definite statement, which defendants William Criswell and Wheeling Police Department have joined, is GRANTED insofar as the more definite statement applies to defendants William Criswell and Wheeling Police Department, and the motion is DENIED AS MOOT insofar the more definite statement applies to defendants Main Street Bank and Rebecca Randolph.  Pursuant to Federal Rule of Civil Procedure

12(e), the plaintiff shall file a more definite statement within ten (10) days of being served with a copy of this memorandum opinion and order. Additionally, defendants United Bank and Roselyn J. Cantini's motion for leave to take the plaintiff's oral deposition under controlled conditions is DENIED as moot.

Counts I, V, and VI remain against defendant Main Street Bank; counts I, III, V, and VI remain against defendant Rebecca Randolph; counts I, III, V, and VI remain against defendant William Criswell; and counts I, II, III, V, and VI remain against defendant Wheeling Police Department.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the pro se plaintiff by certified mail and to counsel of record herein.

DATED:    September 25, 2008


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE