**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**GREG GIVENS,**

        **Plaintiff,**

**vs.**                                  **CIVIL ACTION NO. 5:08CV25**
                                                  **Judge Stamp**

**WILLIAM CRISWELL and**
**REBECCA RANDOLPH,**

        **Defendants.**

## ORDER/OPINION

## I. Procedural History

### A. Motion DE 146

It shall be recalled that on August 4, 2009, Plaintiff Greg Givens, *pro se,* filed a "Notice and Motion for Hearing on Defendant Non-Delivery of Service and Non-Disclosure Upon Plaintiff" [Docket Entry 146]. On August 10, 2009, Defendant Rebecca Randolph filed a Response to the Motion [Docket Entry 148]. On October 23, 2008, District Judge Frederick P. Stamp referred any non-dispositive pre-trial motions, excluding motions in limine, to the undersigned United States Magistrate Judge for decision [Docket Entry 85]. Plaintiff Givens requested a hearing in his Notice and Motion; however, the undersigned found at that time that a hearing was unnecessary to a determination on the issue, and decided the issue without a hearing.[1]

In the 146 Motion, Plaintiff Givens

A.    Charged :

    1)    "Defendant Criswell and Defendant Randolph, and attorneys of record, of Non-

---

[1]The Court found it necessary to reopen or revisit the discussion and order of DE 146 in the overall decisional process with respect to DE 156 because: 1) the claims in DE 156 mirror the claims made in DE 146 and 2) the conduct of Plaintiff in DE 146 impacts the Court's analysis and evaluation of Plaintiff's conduct in DE 156.

Delivery of Service and Non-Disclosure upon Plaintiff.";

2) Defendant Criswell's attorney(s) as having submitted statements of false fact upon this court, and of no intrinsic value as to delivery, instead only certified letters of intentions (not the actual documents), and intimidations upon Plaintiff, ex parte. Citing plaintiff, Exhibits "S", "T", and "U.";

B) Referred to:

(1) Disciplinary Letter concerning Attorney Lee Hall, Jenkins, Fenstermaker, PLLC.

(2) Ex parte letters from Attorney Keith Gamble, Pullin, Fowler, Flanagan Brown & Poe, PLLC.

C) Claimed:

"Such references endanger Plaintiff as to 'unfair prejudice' as evidenced by the multiple Exhibits obvious the matter to any trained attorney

(1) As a *degredior* of civil contempt.

(2) Such *referio* creates "an atmosphere of distrust among the parties" as to "suffer tension among the issues," as such to mislead this Court and create manipulative burdens upon Plaintiff by Defendants' presentation."

D) Asserted that evidence supported his motion, attaching three groupings of documents he marked as:

Exhibit S:

1) A letter from attorney Keith Gamble to Plaintiff, dated July 15, 2009, which states it was sent by Certified Mail. The letter states that Mr. Gamble received Plaintiff's notice to take the videotaped deposition of his client, and explains to Plaintiff that the Court had stayed discovery in this matter. Mr. Gamble requested Mr. Givens withdraw his notice of deposition until such time the Court ruled on pending motions. The letter also informed Mr. Givens that Mr. Gamble intended to file a Motion for Protective Order with the Court. If Mr. Givens withdrew his notice, Mr. Gamble would withdraw his Motion for Protective Order. [2]

2) A letter from attorney Gamble to Plaintiff Givens, dated May 8, 2009, which states it was sent by Certified Mail, making a settlement offer to Plaintiff in return for full and final release of claims against Defendant Randolph.

3) A letter from attorney Gamble to Plaintiff Givens, dated July 28, 2009, stating it was sent Certified Mail, and stating that Mr. Gamble's office had received a second notice to take Randolph's deposition. Mr. Gamble reiterated the Court's stay of discovery, and asked again that Plaintiff Givens withdraw his notice of Deposition. If Mr. Givens did not do so, Mr. Gamble would re-file a motion for Protective Order with the Court. [3]

---

[2] The docket indicates Mr. Gamble did file a Motion for Protective Order on behalf of his client that same day. The Certificate of Service for the Motion indicates Mr. Givens was served "by mailing [to him] a true copy via certified U.S. Mail, postage pre-paid."

[3] A review of the docket indicates that on July 31, 2009, Mr. Gamble did file a Motion for Protective Order on behalf of his client, Rebecca Randolph. The Certificate of Service for that Motion indicates it was served on Plaintiff Givens "by mailing a true copy [to him] via certified

Exhibit T:

1) A letter from Mr. Gamble to Mr. Givens, stating it was sent by Certified Mail on July 22, 2009, and serves as a written memorialization of a conversation between the two, in which apparently Mr. Givens stated he had canceled the notice of deposition of Rebecca Randolph. In light of which, Mr. Gamble states he would withdraw his Motion for Protective Order.

2) A letter from attorney Lee Murray Hall with the firm of Jenkins Fenstermaker, PLLC, to Plaintiff Givens, dated July 20, 2009, stating it was sent to Mr. Givens by Certified Mail, Return Receipt Requested., and informing Plaintiff Givens that Ms. Hall received notice of Givens' intent to take the videotaped deposition of her client, Defendant Criswell. As had Mr. Gamble, Ms. Hall states that the Court had entered a stay of discovery in this matter, and that the notice of deposition therefore was improper. She asked that Plaintiff Givens withdraw his notice, or she would necessarily file a joinder of Defendant Randolph's motion for protective order. Ms. Hall expressly notes that Motion would be mailed under separate cover.

Exhibit U:

July 21, 2009, Plaintiff Givens filed "Notice of Continuation of Video-Taped Deposition of William Criswell" and "Notice of Continuation of Video-Taped Deposition of Rebecca Randolph," evidencing that he had indeed conversed with Mr. Gamble and received the letter from Ms. Hall regarding the depositions.

1) A letter from Lawyer Disciplinary Counsel Jessica H. Donahue to Mr. Givens, regarding "Ethics Complaint against Janice Lee Murray Hall, Esquire." The letter was dated July 23, 2009, and states:

> This letter is to advise you that the complaint you filed against Janice Lee Murray Hall, Esquire, has been received and reviewed by this office.
>
> You alleged that Ms. Murray Hall, who is opposing counsel, made false written statement before the Federal Court in Wheeling, West Virginia.
>
> Your allegation of false statements involve factual disputes and legal questions which are best addressed in appropriate court proceedings. This office does not have jurisdiction to resolve such matters, nor does this office have jurisdiction to review court rulings and court procedure. You should consult with an attorney regarding these issues. Furthermore, it appears that Case Number 07-F-236 was dismissed in the Magistrate Court of Ohio County, West Virginia on January 2, 2008. The basis of the motion to dismiss was to present the matter to the Ohio County Grand Jury . On January 14, 2008, the Ohio County Grand Jury incited you under Case Number 08-F-20 for the same criminal act that was charged in 07-F-236. Ms. Murray Hall

---

U.S. Mail, postage pre-paid."

likely made a mistake and referred to the wrong case number in her motion.

Accordingly, it has been determined that your complaint against Ms. Murray Hall does not constitute a violation of the Rules of Professional Conduct. This complaint will not be docketed but will be closed without further action. Ms. Murray Hall was not required to respond to this complaint.

On September 4, 2009, this Court entered an ORDER denying Plaintiff's DE 146 motion,

expressly finding:

A review of the docket in this case indicates that every document required to be served on Plaintiff, *pro se*, was mailed to him by certified mail, as evidence by the Certificates of Service for each and every filing. Finally, Plaintiff Givens presents no evidence, and the undersigned finds no evidence, that there was any *ex parte* communication between any party and the Court at any time, with the exception of letters sent **by Plaintiff Givens** to the Court. See Docket Entry 67, Order Filing Ex Parte Communications. The Court finds none of the above documents were of the type required to be served pursuant to Rule 5. None of the letters represent Orders, Pleadings, Motions, or Certificates of Service for discovery documents, which must be filed with the Court. Further, all the above letters were properly sent to Plaintiff Givens by certified mail. Each and every exhibit Plaintiff Givens attaches to his motion is correspondence between counsel for Defendant and him, or, in one case, between Disciplinary Counsel and him, regarding an issue raised by Mr. Givens. This type of correspondence, between parties, or, in this case counsel for a party and a party *pro se*, is totally proper. None of the exhibits indicate any "ex parte" communication, which is defined as "communication between counsel and the court when opposing counsel is not present." Black's Law Dictionary (8th ed. 2004) (Emphasis added). Each letter was properly sent by mail to Plaintiff Givens. Each letter, with the exception of Ms. Donahue's, is a proper attempt to make a good faith effort to confer regarding a dispute without court action. See F.R.Civ.P 26(c)(1) which provides, in pertinent part:

A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.

(Emphasis added). In other words, it was not only proper for counsel to confer with Plaintiff before filing their Motions for Protective Order, counsel was required to confer with Plaintiff Givens before requesting a Motion for Protective Order from the Court. Further, a review of the docket indicates that, where the Defendants did file

a Motion for Protective Order with the Court, Plaintiff Givens was properly served by mail, pursuant to Rule 5 (b)(C). Defendant further attached to her response six Return Receipts for Certified Mail, showing Plaintiff Givens received the articles.

Plaintiff cited only those letters he attached as evidence to support his claim, using the abbreviation i.e. (*id est.*), meaning "that is." The American College Dictionary, 599 (1970). The use of this phrase indicates Plaintiff Givens expressly intended to refer only to those letters he attached, and did not mean them to be examples of documents.

A review of the docket in this case indicates that every document required to be served on Plaintiff, *pro se*, was mailed to him by certified mail, as evidenced by the Certificates of Service for each and every filing. Finally, Plaintiff Givens presents no evidence, and the undersigned finds no evidence, that there was any *ex parte* communication between any party and the Court at any time, with the exception of letters sent by Plaintiff Givens to the Court. See Docket Entry 67, Order Filing Ex Parte Communications.

For all the above reasons, the Court **DENIES** Plaintiff Greg Givens' "Notice and Motion for Hearing On Defendant Non-Delivery of Service and Non-Disclosure of Plaintiff" [Docket Entry 146].

It is so ORDERED.

## B.  Motion DE 156

Despite the Court's explicit Order of September 4, 2009, on September 25, 2009, Plaintiff filed a "Notice and Motion for Hearing on Defendant (**In Light of Impending Federal Evidence**) Of Non-Delivery of Service Upon Plaintiff" [Docket Entry 156](emphasis added by the Court).  In the DE 156 motion Plaintiff made arguments identical to those he made in his first Motion [Docket Entry 146], but added that he was now citing "**U.S. Postal Inspection Service Investigation, Criminal Investigations Service Center, Case # CA1000073817,**" (emphasis in original) as Plaintiff's Exhibit "X".

Plaintiff again argued:

Plaintiff cites Defendant Criswell's attorney(s) as having submitted statements of false fact upon this court, and of no intrinsic value as to delivery, instead only certified letters of intentions (not the actual documents), and intimidations upon

Plaintiff, ex parte. Citing Plaintiff, Exhibits "S", "T", and "U."

Reference to record for Defendant Criswell and Defendant Randolph, and attorneys of record:

(1)     Disciplinary Letter Concerning Attorney Lee Hall, Jenkins, Fenstermaker, PLLC.

(2)     Ex Parte Letters from Attorney Keith Gamble, Pullin, Fowler, Flanagan, Brown, & Poe, PLLC.

(3)     **U.S. Postal Inspection Service Federal Investigation into Attorney Keith Gamble and law firm Pullin, Fowler, Flanagan Brown & Poe, PLLC representing Randolph of Domestic Mail Fraud and Mail Tampering, Case No. CA100073817 (9/23/09); West Virginia State Disciplinary Board Complaint(s) against Mr. Gamble.** (emphasis added by the Court)**.**

## C. October 20, 2009 Hearing

The Court, finding the new allegations made against Defendants and their counsel in the DE 156 Motion to be serious and apparently unresolved by the Court's Order in DE 146, granted Plaintiff's Motion for a Hearing, scheduling same on October 20, 2009.

Plaintiff appeared in person *pro se*, and Defendants William Criswell and Rebecca Randolph appeared through their counsel, Lee Hall and Keith Gamble, respectively.

Considering the serious allegations were in the main directed at counsel, the Court did not require Defendants to attend.

During the October 20, 2009 hearing the Court heard the sworn testimony of Plaintiff, Greg Givens, Plaintiff's mother, Carol Pizzuto (Gray) (Givens), and Defendant's uncle Dennis Givens, and admitted without objection 11 exhibits.

Notwithstanding that the Court had already decided the DE 146 Motion and memorialized in its written order that the documents contained in Exhibits "S", "T" and "U" did not evidence any unethical conduct or misrepresentations to the court, or *ex parte* communications, Plaintiff continued

making the same claims he made in the DE 146 Motion including his claim they constituted "false fact upon this court, and of no intrinsic value as to delivery, instead only certified letters of intentions (not the actual documents), and intimidations upon Plaintiff, *ex parte*."[4]

## II. Findings And Conclusions On The Evidence Presented During The October 20, 2009 Hearing When Considered In Context With Findings Relative To DE 146

At the hearing of October 20, 2009, the Court inquired of Plaintiff, under oath, what was "false fact" in the letters, to which Plaintiff replied that the letters were included because they were in reference to "the documents" but that "the documents" they referenced were never received. He stated, "that was the reason for that basis."

The Court then had Plaintiff handed the two letters, asked him to review them, and tell the Court what was "false fact?"

As to the first letter, Plaintiff responded: "The intention to file a motion for protective order with the court." When asked by the Court what was false about that statement, Plaintiff responded, "I did not receive that document, to my knowledge." When asked if that was the only thing he based his allegation that there were false statements in the letter, he referred to the sentence in the letter from Mr. Gamble stating that Mr. Gamble would require written confirmation of Plaintiff's agreement to withdraw his notices of deposition, and that if he did not withdraw the motion, Mr. Gamble would seek a court hearing on the matter. The Court asked Plaintiff what was false about that statement, to which Plaintiff responded: "I made no such statement that I would have a written confirmation for that."

---

[4]The Court explained expressly in the prior Order deciding DE 146 that letters from counsel to *pro se* Plaintiff are not *ex parte* communication; Plaintiff actually received the letters, since he attached copies to his motions; and that the attorneys' advising Plaintiff in the letters that they may be or would be filing motions, such as a motion for protective order, was not only proper, but required under this Court's rules. .

The sentence prior to the one to which Plaintiff referred states: "However, if you agree with my position in this letter and agree to withdraw the Notice of Deposition, I will gladly withdraw my Motion for Protective Order." Mr. Gamble's next sentence simply stated that, <u>if</u> Plaintiff agreed to withdraw the notice of deposition, Mr. Gamble would require written confirmation of that agreement. The Court finds there is simply no false statement.

The Court then inquired of Plaintiff what he alleged was intimidating in the letter, to which he replied: "I thought perhaps that the cost associated with the actual, I thought perhaps if it was a matter of cost that that would be an implication to me that if I couldn't afford to pay those sanctions then that was the consequences." The Court finds that counsel's representation that he would seek costs associated with filing a motion for protective order does not constitute intimidation, as counsel would be permitted to at least seek costs should he prevail on such a motion.

As to the second letter, when asked what was "false," Plaintiff referred to a statement by counsel regarding a settlement offer, stating: "As indicated, this offer is made with the intention of limiting costs in this civil action. I believe, as I suggested to you on the phone, that this matter will never go to trial and will be decided by the Court with a Motion for Summary Judgement in favor of Mrs. Randolph." Plaintiff said he did not recall that statement. Upon further questioning, Plaintiff acknowledged that there was nothing threatening or intimidating in the letter, and the Court so finds.

Plaintiff acknowledged that neither letter was ever filed with the Court, until he filed them himself as an exhibit to his motions. Therefore, the Court finds Plaintiff's statement that these letters represented **statements of false fact to the Court** was, in itself, a false statement, because

the letters were never submitted to the Court by counsel.[5]

Similarly, regarding Exhibit T, Plaintiff also acknowledged none of the three letters were ever filed with the Court until he attached them as exhibits. The first letter is from Mr. Gamble to Plaintiff again requesting Plaintiff withdraw his notice of deposition because the Court had ordered a stay of all discovery pending decisions on motions previously filed. Mr. Gamble stated that if Plaintiff did not withdraw the notice he intended to re-file a motion for protective order, seek an immediate Court hearing, and seek any and all sanctions under the rules. A review of the docket indicates that Mr. Gamble did indeed file a Motion for Protective Order regarding the deposition. The second letter, also from Mr. Gamble to Plaintiff, simply confirms Plaintiff's cancellation of the deposition, and states that Mr. Gamble would withdraw his Motion for Protective Order.[6] The third letter is Ms. Hall's letter to Plaintiff advising that she would be joining Mr. Gamble's Motion for Protective Order unless he agreed to withdraw the notice of deposition on Defendant Criswell. Again these letters were not submitted to the Court by counsel.

As with Exhibit S, the Court finds there is not a scintilla of evidence that anything in Exhibit T is "false fact upon this court, and of no intrinsic value as to delivery, instead only certified letters of intentions (not the actual documents), and intimidations upon Plaintiff, *ex parte.*"

Exhibit "U" consisted of a letter to Plaintiff Givens from Jessica H. Donahue, Lawyer Disciplinary Counsel for the West Virginia Office of Disciplinary Counsel, regarding the ethics

---

[5]The only way this Court became aware of the letters (correspondingly - the contents of the letters) as well as Plaintiff's interpretation of them was when the Plaintiff filed them as exhibits to his Motions (DE 146 and 156).

[6]Despite this agreement, the Court notes that on July 27, 2009, Plaintiff again noticed depositions of both defendants. Both defendants again filed Motions for Protective Order which this Court granted on August 10, 2009.

complaint Plaintiff filed against attorney Hall.  The Office concluded as follows:

> Accordingly, it has been determined that your complaint against Ms. Murray Hall does not constitute a violation of the Rules of Professional Conduct.  This complaint will not be docketed but will be closed without further action.  Ms. Murray Hall was not required to respond to this complaint.

The Court expressly finds this letter is not evidence of anything except the fact that Mr. Givens filed an ethics complaint against opposing counsel, which was dismissed.

Plaintiff's new evidence, attached as exhibit "X", consists of:

(1) A Certificate of Service for "Defendant Rebecca Randolph's Motion to Vacate Scheduling Order Pursuant to LR CIV P. 16.01", which certifies that Keith Gamble, Esq. served a copy on Plaintiff "by mailing a true copy via certified U.S. Mail, Postage pre-paid to the following parties: Greg Givens, Plaintiff, pro se."

This Certificate of Service is dated September 18, 2009.  Attorney Gamble attached to his response to Plaintiff's motion DE 156 an Affidavit from Candi Baxter, a Legal Assistant in his office, in which Ms. Baxter avers under oath that she has been responsible for sending copies of pleadings and letters in this matter to Plaintiff since August 2009.  She then avers under oath:

> On September 18th, 2009, I made a mistake and sent "Defendant Rebecca Randolph's Motion to Vacate Scheduling Order Pursuant to LR CIV P 16.01" to Greg Givens's address of record, 3735 Highland Avenue, Shadyside, OH, 43947-1355 by means of first class mail through the United States Postal Service.  This document should have been sent by certified mail, as stated in the certificate of service for that document.  However, I did send this document to Mr. Givens through the regular United States mail.

Additionally, Mr. Gamble attached to his response a copy of an email he sent to Plaintiff Givens at his email address of usalaw4you@aol.com on Friday, September 18, 2009, at 4:03 PM and to which Mr. Gamble appended the very document of which Plaintiff Givens complains.

Significantly, Defendant's filing of the motion to vacate the scheduling order was prompted by Plaintiff's email to Defense counsel on September 17, 2009, noting that the scheduling order required settlement conference by September 18, 2009, and therefore notifying Defense counsel, via

that email, that a Settlement Conference would take place on September 18, 2009, at 2:00 PM.

(Interestingly, this appears from the record to be the sole notice provided to counsel by Mr. Givens.

There is no Certificate of Service for such a notice). Mr. Gamble responded via email on September

18, at 11:47 am as follows:

> I am in receipt of your notice. As there are Motions pending and the Court has stayed this matter pending a ruling, I do not believe it proper to proceed with a settlement conference. I will, however, be filing a Motion to Stay all deadlines today which I believe will obviate the need for such a meeting at this time. This is not to suggest that my client will not participate at a later date in such a meeting depending on the Court's ruling on the pending Motions. I will mail and email you a copy of my Motion. Please let us know if emailing documents to you is an option, as it will ensure that you receive all items filed with the court concurrently vs. having lag time in the mail.
> If you have any question, do not hesitate to contact me via email or phone. Thanks.

Plaintiff Givens responded to Mr. Gamble's email at 2:47 PM on September 18, 2009, as follows:

> Mr. Gamble:
>
> Your email is hereby acknowledged. However, I have received no other attempt to "cooperate in the effort to achieve a successful negotiation" (in the words of the Court's Order) by the other named defendant. You may want to discuss the matter with them ASAP.
>
> Depending on the outcome of these defendants, I may strongly be persuaded to pursue my rights with a jury trial.
>
> Please be advised.

As already noted, the email to Mr. Givens from Mr. Gamble's office attaching the Motion to Vacate

Scheduling Order was sent at 4:03 PM that same day.

Based upon all of the testimonial and documentary evidence, the Court finds by a

preponderance of the evidence, that the Motion to Vacate Scheduling Order was mailed by United

States Postal Service regular mail on September 18, 2009; that the motion was also emailed to

Plaintiff that same day; that the motion was made in direct response to emails sent by Plaintiff the

day before unilaterally scheduling a settlement conference; and that Plaintiff had notice of the actual motion.

As previously noted, Givens filed in support of his motion (DE 156) a copy of a complaint he made to the West Virginia Lawyer disciplinary Board filed on September 25, 2009, complaining of attorney Gamble, and expressly stating as the ethical violation complained of:

> The **U.S. Postal Inspection Service has Opened up Criminal Investigation** into the Non-Delivery of Certified Mail in Reference to Mr. Keith C. Gamble and the Law Firm of for mail tampering/mail fraud, (Case No) #CA1000073817. Mr. Gamble willingly and knowingly made a false written statement before the Federal Court in Heeling [sic] WV on eighteenth day of September, 2009, on which the Federal courts need to rely and act upon. Mr. Keith C. Gamble's statement, in bias of another, citing attorney Keith C. Gamble (WV Bar #7971) response on behalf of Rebecca Randolph for Non-Delivery of Serve and Non-Disclosure Upon Plaintiff . . . .
>
> Such certified acts never took place; and is deliberate falsification of fact upon which Federal Judge Frederick P. Stamp, Jr., Magistrate Judge John S. Kaull, and Juris must rely such an occurrence. (See Attachment U.S. Postal Service Log of Delivery). Greg Givens' cousin is the district postmaster for the entire Region in Ohio. Mr. Givens charges this action, with deceiving this Court, where Mr Givens has not, nor has ever received what Mr. Gamble has certified as service of process upon Givens . . . . (emphasis added by the Court)

Mr. Givens also attached a document which was made part of Exhibit X, and bore the following heading:



**UNITED STATES**
**POSTAL INVESTIGATION SERVICE**
**CRIMINAL INVESTIGATION UNIT**
**INVESTIGATION Re:**

**Keith C. Gamble, Esq.**
**Pullin, Fowler, Flanagan, Brown & Poe, PLLC**
**214 Cranberry Square, Morgantown, WV 26508**
**(304) 225-2200**

Under the heading and within the document is a spreadsheet-type listing entitled "MAIL LOG" containing a list of 24 mailed articles. The first two items listed are from September 18, 2009 and July 15, 2009. The listings then each state there is "NO POST RECORD" and "MAIL FRAUD/MAIL TAMPERING."

Upon receipt of this document, which Plaintiff represented to the Court as proof of "**Impending Federal Evidence**" consisting of "**U.S. Postal Inspection Service Investigation, Criminal Investigations Service Center, Case # CA1000073817**," the Court conducted its own cursory research and review, and determined there is no such document or even anything resembling such document in the United States Postal Service. Instead, the Court found a logo identical to that in the heading of the document (except the document is in black and white) on the Postal Inspection Service web page.

From this cursory research and review, the Court had serious questions and suspicions concerning the validity of the document in question which questions and suspicions were answered and validated by the following testimonial evidence received during the hearing of October 20, 2009.

Counsel for Defendant Randolph inquired of Plaintiff regarding the document with the heading of the United States Postal Investigation Service. Counsel handed a copy of the document to Plaintiff and asked:

Atty:   Who created that document?

Pl:   Well, I created the list of documents for the preparation for the postal inspection service at their request. So that document was forwarded to the postal inspection unit.

---

[7]The Postal Department Icon on the header is the "black spot" on the original document prepared by Plaintiff that becomes a matter of significant inquiry during the hearing of October 20, 2009.

Atty:    The heading of that document was created by who?

Pl:      Are you talking about the actual part here? . . . .

Atty:    Let's make it easy.  I'll read it.  It states United States Postal Inspection Service Investigation

         Unit . . . .three lines.  Who created that?

Pl:      That was in reference to myself.

Atty:    Who created that?

Pl:      I created the mail log. This part here, this entire sheet, was created by myself.

Atty:    Ok.  So we're clear.  From the top of page one to the bottom of page two, you created

         everything on that document.  Is that correct?

Pl:      No, that's not correct.

Atty:    Okay.  What did you create? What was not created by you on that document?

Pl:      The mail log I created.  I created this part here, they wanted it referenced to the mail address.

         At this point the Court intervened in the questioning:

Ct:      Let me ask it a different way. You tell me, Mr. Givens --read to me what you caused to be

         put on that document.

Pl:      I caused to be put, in reference . . .

Ct:      Everything.

Pl:      Yes.  There was a "TO" in reference to "United States" . . .[8]

Ct:      No, read it to me.

Pl:      What I caused to be "TO" United States Postal Inspection Service Criminal Investigation

         Unit.  And when I spoke to the Investigation Services . . . .

---

[8]There is no word "To" in the heading of any copy of the document submitted by Plaintiff
to the Court.

Ct:     You typed those words in, yourself.

Pl:     It was "TO," addressed "To" them.

Ct:     You typed that in.  On a computer.

Pl:     No, I typed in the part where it said "TO" on there.

Ct:     You typed the word "TO?"

Pl:     Yes, "TO."

Ct:     You did not type in United States Postal Service Criminal Investigation?

Pl:     Yes, because they had referenced that specifically.  That I had to . . .

Ct:     So you did type in those words.

Pl:     Yes.  I did.

Ct:     Oh.  What next did you type in?

Pl:     Well, I typed in the reference to the law firm because they had requested specifically where
        the mail would be from?  They asked for that specifically.

Ct:     And that appears right below the "TO" with the Criminal Investigation Unit.

Pl:     Yes, that's correct.

Ct:     And the law firm's name, address, perhaps even telephone number and email.  Is that
        correct?

Pl:     Yes, that's correct, your Honor.

Ct:     What next did you type in?

Pl:     Well, there was a case reference number they assigned me.  So I went ahead and referenced
        that number as well, because they wanted me to reference any documents I had not received.

Ct:     Were you aware, sir, that Criminal Investigation Numbers in the United States Postal
        Department– Criminal Investigation Numbers– carry with them certain letter designations

at the conclusion of the number? . . . .

Pl:     No, I was not aware of that

. . . . .

Ct:     You didn't put on there anyplace that a response to it to be made to you.

Pl:     I don't know what you mean.

Ct:     Well, is there any place for the person who receives that to respond to you to acknowledge that they've received it?

Pl:     No, it wasn't necessary, because the postmaster knew where I lived, and she knew the situation exactly.

Ct:     And who was this document delivered to?

Pl:     This document was prepared and delivered to the postmaster . . .

Ct:     The lady who is your relative?

Pl:     Yes.  She's the regional post master.

        Attorney Gamble then re-commenced his questioning.

Atty:   Mr. Givens, I was asking you what was created by you in this particular document itself.  Up in the top left hand corner, next to the "United States Post Office Criminal Investigation Unit" there's a black box.  Do you see that?

Pl:     Yes, I see it.

Atty:   What is that black box on that document?

Pl:     I don't know what that is, it's just a blurb.

Atty:   It's just, I'm sorry?

Pl:     It's just a blurb.

Atty:   Did you put that black box on that document?

Pl:     No, I did not.

Atty:   Ok.  Where did that....where did that black box come from?

Pl:     I don't know.

At this point in the proceedings the Court replaced the copied documents being used by counsel with the original exhibits submitted to the Court by Plaintiff as an attachment to his Motion. Counsel's questioning continued:

Atty:   In the top left hand corner of that document, it states United States Postal Inspection Service Criminal Investigation Unit, correct?

Pl:     Yes.

Atty:   To the left of that, those three lines, there's a small box, correct?

Pl:     Yes.

Atty:   What is in that box? Can you see it?

Pl:     Yeah . . . I . . . I don't know what it is.

Atty:   You don't know what that is?

Pl:     It looks like something.... it looks like something in a circle.

Atty:   Ok.  That small box on that document, did you put that there?

Pl:     No.

Atty:   Ok.  It is your position, just so the record is clear, that that small box appeared on that document when you started creating these other items?

Pl:     No, that's . . . that wasn't there.  No, that wasn't there.

Atty:   That wasn't there.

Pl:     No, that wasn't there.

Atty:   Am I to understand your testimony, then, that your testimony is that you never put that box

there?

Pl:     Yes, that's correct.

Atty:   And are we clear that you filed that particular document as an exhibit in this case?

Pl:     Actually, I did not personally file that document. I left that to a carrier that actually handled that document and actually handed it to the court without me actually being present. When these documents were tendered they were handled by a third party.

Atty:   Is it your position, Mr. Givens, that, based on your statement, that you believe a postal worker, or some third party, placed that box up there in the top left hand corner of that document near where it says United States postal Inspection Service Criminal Investigation Unit?

Pl:     I have . . . I have no idea.

Atty:   I'm asking you, sir, did that square appear in that document when you filled in the other information that you already testified to?

Pl:     Well . . .

Atty:   Answer my question, sir. Was that square on that document when you started filling out the other items you already testified to?

Pl:     No. That wasn't there.

Atty:   So it's your position, that that square– that little insignia in the left hand corner was not on that document.

Pl:     I can't validate that that's even anything. It doesn't look like anything to me. It just looks like a square to me. I mean, it just looks like something that you get from an email where it's just you put a little box on something.

Atty:   It might look like something that you'd cut and paste off the internet, would you agree with

that?

Pl:     I can't even identify what it is.  What is it?

Atty:   Mr. Givens, when you made this document an exhibit to your motion, and where you filed

        a bar complaint against me, and you filed it with the Federal Court at least twice, did it not

        seem pertinent that you would mention that someone had altered your document?

Pl:     Well, again, I had dealt with a third party, who carried it . . .

Atty:   I'll ask it again.  Did it not seem pertinent to mention to the Court under oath, that the

        document that you sit here and tell us has been altered was not an important fact?

Pl:     Yes, it's an important fact.

Atty:   Then why is it just now that you're telling us this.

Pl:     Well, I . . . . . . .you just pointed it out to me.

Atty:   So you didn't notice it until I pointed it out to you.

Pl:     No, I did not notice it.

 . . . .

Atty:   Mr. Givens, so that I'm clear, was the two-page document in front of you–who did you give

        it to, exactly?

Pl:     I give it to a man by the name of Kevin Tomlinson is one of the carriers that I use.

Atty:   Did you hand it to a postal carrier?

Pl:     I handed it to uh, there was a carrier . . . I'm sorry, not a carrier.  This was handed to – how

        would you put that– someone that does not work for the postal service, but does carry your

        service.  It's like a third-party carrier. I don't know what they call them.  They're just

        somebody like you hire a carrier to present it to the court– they take it and drop it off at the

        courthouse.

Atty:   Where was this carrier at?

Pl:     At what specific time?

Atty:   When you handed it to him?

Pl:     This specific document?  I don't recall.

Atty:   So, you're testifying that you didn't give this to the postal service, but you gave it to some unknown third party who does not work for the postal service. Is that what your testimony is here today?[9]

Pl:     Yeah.

Atty:   And even though you've testified that you and your family are infinitely familiar with the postal carriers that deliver to your home, you still don't know who this person was?

Pl:     Which person are you referring to?

Atty:   The person that you handed this document to, Mr. Givens.  We're talking about this document.

Pl:     Oh, yes, I know who that is.  The carrier that I use  is Kevin Tomlinson.

Atty:   And he does not work for the postal service?

Pl:     He does not work for the postal service.  Correct.

Atty:   Then, how do you know him?  You know him by name but you don't know who he works for?

Pl:     Yes, I know him by name.  He works for . . .  it's called Outback, in St. Clairsville, Ohio.

Atty:   And they do what, exactly?

---

[9] The Court notes that Kevin L. Tomlinson is listed as a trustee and incorporator of Plaintiff's nonprofit corporation "Adventure Novelty Association" on the Ohio Secretary of State web page since its incorporation in 1996, so Mr. Tomlinson, the "third party" can hardly be said by Plaintiff to have been some unknown or untrustworthy party.

Pl:     They do shipping and processing.

Atty:   Is it like a Mailboxes, Etc.?

Pl:     I wouldn't say so.

Atty:   Do you mail things through Mr. Tomlinson's business?

Pl:     No, I don't mail things through him, he's not the postal service.

Atty:   Do you submit things to him to be mailed?

Pl:     Yes.

Atty:   Is it your position that that is what this document went through? This document that we're talking about?

Pl:     Yes. Yes, I assert that. But this specifically, I can't recall on that day.

Atty:   Do you have any record of mailing this document?

Pl:     No, I don't.

Atty:   You stated when the Court was asking you some questions about this document– where is the "To" on this document?

Pl:     The "To" was in the place where the blurb was. The box is actually in there, and it stated the word "To" in it.

Atty:   So it's your position that this box that you've never seen until today is over the "To?"

Pl:     Yeah, that's probably why I overlooked it. Because the simple fact was, it said, "To."

        The Court then inquired of Plaintiff, under oath, for an explanation of how the logo of the United States Postal Inspector[10] got on the document he now admittedly prepared himself and submitted as part of the evidence supporting his motion and as part of the evidence he submitted to

_____

[10]Although Plaintiff never admitted that the "box" was actually the logo of the United States Postal Service, and was, instead, just a "blurb," it is clear from Plaintiff's own exhibits to Docket Entry 174 at pages 12 and 13 that it is, indeed the U.S. Postal Inspection Service logo.

the State Bar.  Plaintiff testified:

> The only explanation I have is that that document was prepared on a public access terminal.  I had stepped away from the terminal at the public library.  It was in a major public library, and that document was delivered by a third-party carrier.  That's all the explanation I have.

The Court finds this explanation totally inconsistent with Plaintiff's previous testimony that the box was not on there before he sent it with the carrier, Mr. Tomlinson, a person known to him. Upon which, the Court inquired whether Plaintiff had made some sort of copy of the original before handing it over to the third-party-carrier for hand-delivery to the Court, to which Plaintiff testified: "I don't remember–don't recall."  The following colloquy then took place:

Ct:     You keep copies of everything, don't you?

Pl:     I keep copies of what's filed, yeah, with the court . . .

Ct:     Well, you filed this with the court.

Pl:     Yes.

Ct:     And does your copy then have the box or not have the box?

Pl:     My copy has a box there, but it's not distinguished at all.  It's blacked out.

Ct:     Where did you make this copy?  At the library?  On the day that you made this document?

Pl:     Yeah, there's several places I make 'em at.

Ct:     No, my question was specific.  Did you make your copy of the document at the library, before you left the library?

Pl:     I left the documents that were near the copy machine, and I had them there. There was about five people waiting on line that day.  It was a pretty busy day as I recall.  And I had stepped away to go to the restroom, and I didn't figure that it was a public library, I had no problems with it before.  And I was still logged online on the computer and uh, that's where I was at

at the time, so it was in line for the copy machine.  I can't recall whether I made it that day to the copier or not.

After this colloquy, counsel noted that Plaintiff had a file from the case on his table, and asked that Plaintiff produce the original copy.  Plaintiff then went through his file and said it was not in there.

Upon consideration of all which, the Court finds by a preponderance of the evidence that Plaintiff's refiling his motion **"In Light of Impending Federal Evidence"** and his citing as such evidence "**U.S. Postal Inspection Service Investigation, Criminal Investigations Service Center, Case # CA1000073817**," was an attempt to mislead the parties and this Court and possibly the West Virginia State Lawyer Disciplinary Office into believing this document represented a genuine United States Postal Service Criminal Investigation document.   The Court further finds such attempt to mislead was knowingly and willfully done by Mr. Givens with the malicious intent to purposely bias this Court and the West Virginia Lawyer Disciplinary Office against counsel for Defendants.  The Court finds Mr. Given's testimony under oath that the "box" was not on the document when he created it; that he did not recognize the "box" shown to him as the United States Postal Service Inspection Service logo; his testimony  that it may have somehow gotten on there when he handed it to a third-party courier;  his subsequent testimony that it may have been altered by someone at the public library when he went to the restroom is not only not credible, but absolutely unbelievable.

Plaintiff admitted during his testimony that he did not have a right to receive documents by certified mail and that the rule only required Defendants certify they had deposited the document or pleading in the regular mail.  The Court has already found by a preponderance of the evidence that Mr. Gamble's office mailed the September 18, 2009, document to Plaintiff via regular mail, and also by email.  Further, Plaintiff had notice of the motion and was aware of the motion.

Regarding the July 15, 2009, document, Mr. Gamble produced a copy of the return receipt

for certified mail delivered on July 18, 2009, signed by Dennis A. Givens. Plaintiff, however, alleges this was a fraudulent document, created after the fact, and the signature is forged. Dennis Givens, Plaintiff's uncle, also swears in his affidavit that the signature on the receipt is not his. However, the "track and confirm" service on the USPS web site shows article number 7008 1300 0001 9386 0875 was "delivered at 1:26 PM on July 18, 2009 in SHADYSIDE, OH 43947." Accordingly the Court finds Plaintiff's testimony and that of his uncle to be incredible and gives it no weight.

Among other items identified in the "mail log" were documents filed by Defendant Criswell, including [DE 115] Criswell Notice of Deposition; [DE 125] Criswell Notice of Continuance of Deposition; and [DE 136] Criswell Joinder for Protective Order. Plaintiff was unable to explain why items attributed to Defendant Criswell and his counsel, Ms. Hall, were included on the "mail log" contained in "United States Postal Inspection Service Criminal Investigation Unit Investigation re: Keith D. Gamble, Esq. . . . ." Nevertheless, attorney Hall examined witness Carol Pizzuto, who acknowledged she also goes by the names Carol Gray and Carol Givens. Ms. Pizzuto identified the signature "Carol Gray" on a certified mail return receipt as hers. The date was July 2, 2009. Although she testified that she would not know what that document was, she did sign it on that date. Attorney Hall next showed the witness a second certified mail return receipt card signed by "Carol Givens" on June 18, 2009. Ms. Pizzuto also could not recall what document was received that day, but did testify that it was her signature. Counsel then showed witness Dennis Givens a signed certified mail receipt and asked if the signature on the card was his. Mr. Givens testified that it was, and was dated July 23, 2009.

Regarding the items Plaintiff Givens alleged in his motion itself were not delivered to him by Defendant Criswell, Attorney Hall inquired of Plaintiff Givens whether he was still charging

Defendant Criswell through his counsel, of non-service of documents. Plaintiff testified he "accepted the letter" from the Lawyer Disciplinary Office that stated "it was a mistake." Attorney Hall asked him why he then again charged on September 25, 2009, that he had not received service from Defendant Criswell, to which he responded:

> "Oh, those were referred under the other case. The case that they had...uh... I assumed that would be because of the letter that I received from the State Bar that they were reopening the same appeal, that it was . . . I thought, in my opinion, it was the same matter. That's why there was a reference to it."

Attorney Hall then asked:

Atty:    Mr. Givens, you haven't filed a complaint against me with the State Bar concerning non-service of documents, have you?

Pl:    No, there was a complaint filed against you.

Atty:    But did it relate to the fact that you had not been served with documents?

Pl:    Uh, no. No. That's, you're correct, yes.

Atty:    So my question to you is what document is it you're contending now or at any time in the past I have not served you with?

Pl:    As I recall, there isn't any.

Atty:    I'd like to go back to the document that we have talked about here today . . . . Did you prepare this on a typewriter or a computer?

Pl:    Oh, this was done . . . this wasn't done on a typewriter, it was a computer.

Atty:    When you started out on the computer, did you have a template or a form that you were using?

Pl:    I don't understand.

Atty: I mean is, what document, what processing system did you prepare the document in?

Pl: I use, uh, Microsoft Word and there's also WordPerfect . . . .

Atty: Did you download a document to prepare this form.

Pl: No, there's no download.

Atty: I'm looking at the boxes, the rectangular shaped boxes that contain Keith Gamble's name and your name. And I'm pointing to the actual lines- the horizontal and vertical lines. Who prepared the boxes?

Pl: Oh, there's different formats that they use for WordPerfect that prepares different forms.

Atty: Did you put these boxes in?

Pl: These were already in the format. They were already used.

Atty: Who supplied the format?

Pl: Microsoft.

Atty: So these boxes came from a WordPerfect or word processing document that you had on your computer.

Pl: No, actually it was on the library computer.

Atty: The library computer. Is there any part of this document, that was prepared in any way, by the United States Postal Investigation Service?

Pl: Not to my knowledge.

Atty: You prepared every part of this document, didn't you?

Pl: As I stated before in previous testimony, this specific document here?

Atty: Yes.

Pl: With the exception of the top part, yes.

Atty: You said the top part. What are you referring to?

Pl:     This, this box is what I'm referring to.

Atty:   Oh, the black box?

Pl:     Yes, the black box.

Atty:   You didn't put that there, right?

Pl:     No.

Atty:   You didn't download it?

Pl:     No.

Atty:   You did not, in any way, cause that black box to be placed on this document.

Pl:     No . . . . that's correct.  I testified to that.  The "mail log" itself, I prepared that.

Atty:   Do you still have the electronic copy of this on your computer?

Pl:     No.

Atty:   Did you save it anywhere, on a disc or a flash drive?

Pl:     No.  It was prepared in the library.

Atty:   And printed off?

Pl:     Yeah, once it was printed, it's gone.  But . . . because, there was no reason to keep it.

Atty:   And just so that I'm clear, you submitted this document to the United States Postal Inspection Service, right?

Pl:     I submitted it to the Postmaster.

Atty:   To the Postmaster– because she had asked you to do that.

Pl:     She had wanted to assist in every way she could, so she said prepare anything you could to be able to assist her in being able to look into it further.

Atty:   So she asked you to prepare a document, and you prepared it at her request?

Pl:     Actually, she asked, uh, she said she would advise putting something together, and then be

able to talk to the national 800 service people first.  And then they had recommended compiling it together and be able to prepare something once an investigator actually physically contacts me.

Atty:   But did you prepare this before the investigator actually contacted you or afterwards?

Pl:     Uh, I'm trying to recall when it was. . .  I think it was afterwards.

Atty:   After you were contacted by the United States Postal Inspector.

Pl:     No.  No.  It was before.

Atty:   Was it between the time you first talked to Miss Ruffner on the 24th and the time that you heard from the Postal Inspector/Investigator?

Pl:     I don't recall the exact date, but it could have been.

Atty:   On the document that you have prepared, you have identified, and I'm looking at the second page of the document, on the very top line, where it says: Criswell Notice of Deposition . . . . . do you see that line?

Pl:     What date was it?

Atty:   It's the very first line, document 115.

Pl:     Yes.  I see it.

Atty:   Are you contending that you didn't receive document 115?

Pl:     heck no, there's no contention there.

Atty:   Ok.  Why is it on this log?

Pl:     Because when I spoke to the postmaster, she said to include anything that you feel pertains to the specific dates within that time frame.  They wanted to look into all of that because they stated that a law firm routinely mails out a lot of certified mail, and they can verify that both through where the origin branch is located as well as the destination branch.  So that was at

their request.

Atty:   So you were never making any contention that Criswell failed to notify you of thee deposition,

Pl:   No, there's no contention there.

Atty:   Even though you included it on this log . . . .  Let's move on to Document 136 . . . . and on the end you have No Purposeful REF. Deliv+[11].  What does that mean?

Pl:   Oh, I see.  Yes, that was one that was actually not received.

Atty:   You deny that you received that document.

Pl:   At the time that this was prepared, I was going over my documents at that time, and it was within the list of that.  That was correct at the time.

Atty:   You heard your uncle, Dennis Givens, testify earlier today, right?

Pl:   Yes.

Atty:   And you heard him testify . . . . that the signature and the name on the certified mail receipt were his . . . . .

Pl:   Yes.

[Counsel hands the original of the certified mail receipt to Plaintiff]

Atty:    Do you see that?

Pl:   Yeah, I see the original.

Atty:   Do you see his name, Dennis givens on that?

Pl:   Yes.

---

[11]The marking + was used to denote a footnote, which states:
Again, Certified reference to the Federal Court to an event which actually did not happen. Deception upon the Federal Court by Mr. Keith C. Gamble, as not being the latest example of such to the Court from both attorneys, Ms. Lee Murray Hall and Mr. Keith C. Gamble . . . .

Atty:   Did you hear him testify earlier that a copy of that same document was his signature and his name.

Pl:     I don't specifically recall if it was July 23, 09, but yeah, it's possible.

Atty:   Will you lift up the green card? And will you read the title of that document? . . . .

Pl:     Defendant William Criswell's Joinder in Defendant Rebecca Randolph's Motion for Protective Order.

Atty:   So that's a document 136 that you referred to in your mail log to your fraud action, right?

Pl:     Uh, well, let me see . . . It appears to me to be a different one, because there's different dates on here . . . . I mean, the one you're referring to has July 20, 2009, and the other one says July 23, 2009 . . . .

Atty:   Would you turn to the last page of the Motion for Protective Order . . . that contains the Certificate of Service on it . . . . What is that dated?

Pl:     The 20th. Yes, it is then correct. Yes. It's the same one . . . .

Atty:   So you had no basis for placing that on your document as a document that had not been received by my client . . . from my client.

Pl:     Oh, I'm trying to think how I recall receiving this, if I did. Uh, I don't know if it was later emailed to me.

Atty:   Are you denying that the document was received, at your home, on July 23, 2009?

Pl:     Oh, obviously it states here that it was. This looks genuine. But I don't work for the Postal Service, so . . . I'd say yes, it's possible.

Atty:   So you had no basis for including that on your mail log, did you?

Pl:     Yeah, that's right. It was an honest mistake then.

Atty:   You had no basis for including Defendant Criswell in any way on your Motion for Non-

Delivery of Service, did you?

Pl:      Well, this one here– the ones that are blank, there was no contention . . .

Atty;    So the only one you had any contention regarding was 136?

Pl:      Yes.  And at that time there was no . . . no physical reference to that document, when this was prepared . . . .

Atty:    Do you mean that you couldn't find it at your house?

Pl:      It's possible.

Atty:    Is that what you mean when you say there was no reference . . .

Pl:      Well, I mean, I keep everything all together in the same organized file, and I didn't perceive why I would have mistaken a document like that . . . so it's either I received it by email at a later time, or the document was actually located after this document was prepared.  That's all I'm saying.  So yeah, that should be not in there.  That should not be in there.  That should have been left out.

At the conclusion of the hearing, the Court noted Defendants' Motion to Dismiss based on Plaintiff's non appearance at his deposition.  The Court expressly advised that motion, as a dispositive motion, was not before him at this time, but that the Court would, in order to keep the case proceeding efficiently, schedule Plaintiff's deposition.  The Court, with agreement of all parties, scheduled the taking of Plaintiff, Gregory Givens, deposition on November 3, 2009, at 9 a.m. at the Federal Courthouse in Wheeling, West Virginia.  The Court advised, in accord with the rules that the deposition may not exceed 7 hours, without a motion to the Court; that only the parties and counsel be present for the deposition; and that no further formal notice need be given Plaintiff, except if the defendants were requesting documents, in which case a subpoena must be properly served.  The setting of this deposition is in no way to be considered a ruling on Defendants' Motion

to Dismiss based on Plaintiff's non-appearance for the previously-scheduled deposition.

### III. Decision and Order

Upon consideration of all which, the Court orally announced its decisions as follows and now memorializes the same by Order:

1) **To the extent that Plaintiff's Motions, DE 146 and 156, assert that the Plaintiff did not receive or that the defendants, more importantly, failed to comply with Fed. Rule Civ. P. 59(b)(2)(C) and Local R. Civ. Proc. 5.01(d) (mailing to the persons' last known address, in which even service is complete upon mailing), the Plaintiff has failed to show by a preponderance of the evidence that there was a failure to comply.[12] The evidence in this record is overwhelming that the defendants mailed the documents in question to the last-known-address of this plaintiff; there is no requirement that those documents be mailed by certified mail or other restrictive mail delivery; Plaintiff has no rational explanation why he did not receive the two or three pieces of mail that he asserts he did not receive; and that mailing . . . service is complete upon mailing under the rule.**

2) **Accordingly, this court will not require counsel to serve the *pro se* plaintiff with a notice of discovery request by certified mail or restrictive delivery mail; and delivery by placing on regular mail is sufficient under the rule unless the rule calls for service otherwise.**

3) **Givens has sought clarification as to his access to Court documents [DE 175]. The Court finds that the *pro se* Plaintiff can go to any one of out court clerk's offices and look on the public access terminal to CM/ECF using the case name, case number, and look up the docket and look up the documents in that docket that are not sealed and restricted from his**

---

[12]In fact, Plaintiff admitted that he had no reason to include Defendant Criswell in his motion at all.

view.  The Court further finds that Mr. Givens can apply for and obtain a PACER account, and use it to look at documents, and to get copies of documents at his expense.  PACER stands for Public Access to Court Electronic Documents.  The Court further finds that the *pro se* Plaintiff can go to any one of the points of holding court, Wheeling, Martinsburg, Clarksburg, or Elkins, and can apply for and obtain PACER access in accord with the rules.

4)      The subpoenas issued in this case for the hearing on October 20, 2009 are quashed for failure to comply with rule 45 (a)(2) and (3).

5)      Accordingly, docket entries number 146 and 156 on substance are DENIED.[13]

6)      The Clerk is directed to remove docket entries 146 and 156  from the docket of motions pending before the court.

7)      Plaintiff's deposition is scheduled for November 3, 2009, commencing at 9:00 a.m. and continuing thereafter, with reasonable breaks for a period of 7 hours net of breaks at a conference room to be arranged at the Wheeling point of holding court with only the pro se Plaintiff, the parties to this litigation and counsel for those parties being present for that deposition along with any court reporter . . . . No further notice need be given of the deposition time, date, or place. Or duration, however, notice of any and all documents or tangible evidence to be produced is required in accord with the rules.

8)      Plaintiff has ten days within which to appeal the ruling of the Court to the District Judge.

Defense Counsel made a motion for costs.  The Court directs counsel for both defendants to submit an accounting of their costs pursuant to the motions docketed as 146 and 156 to the Court

---

[13]DE 156 shall remain on the docket pending any future order with respect to costs and or sanctions.

with a copy for Plaintiff, within ten (10) days. Plaintiff, *pro se,* will then have ten (10) days within which to file and serve his objection to costs and to the amount of costs. Only if both a motion for costs and objection are filed to same, shall the Court schedule an opportunity for the parties to be heard in accord with the rule.[14]

For docketing purposes only, Docket Entries 146 and 156 are **DENIED**. Docket Entry 175 is **GRANTED**.

**IT IS SO ORDERED.**

The Clerk of the Court is directed to send a copy of this Order to counsel of record, and to Greg Givens, Plaintiff *pro se* by Certified United States Mail, return receipt requested..

DATED: October 29, 2009

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

---

[14]At the conclusion of the hearing of October 20, 2009 the Court advised Plaintiff Givens that the Court was "extremely concerned" with his conduct in this case, stating:
> I will be specifically finding in my order that you filed motions and attached documents to those motions that you created to leave an impression upon the reader of those documents and the viewer of those documents that there was, in fact, an ongoing criminal investigation being conducted of the offices of Attorneys for Defendant Randolph. That you did so I believe maliciously. And if it was not maliciously then it was certainly foolishly. I will review this matter for contempt of court and for appropriate sanctions under the rules. What you have done is no way to conduct business in Federal or any other court of law, and I'll not have it. You have a right to prosecute your claim, but you don't have a right to smear people with innuendo absent of any fact. And there is no fact. You've got nothing and you had nothing and you wasted everyone's valuable time including your own. And if you have misused the government's logo under the United States Postal Service and they choose to investigate that, then that will be their business and on you.