# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

GREG GIVENS,
        **Plaintiff,**

*vs*.                                                  **CIVIL ACTION NO. 5:08CV25**
                                                             **Judge Stamp**

**WILLIAM CRISWELL and**
**REBECCA RANDOLPH,**

        **Defendants.**

## ORDER/OPINION

### I. Procedural History

January 14, 2008 Plaintiff Gregg Givens [Givens], representing himself [pro se], filed a complaint against Main Street Bank, William Criswell, Rebecca Randolph and others [DE 1]. Throughout the lengthy history of the case Givens continued to represent himself. Defendants Main Street Bank [Main Street] and Rebecca Randolph [Randolph] have been represented by attorney at law Keith C. Gamble [Gamble] and Defendant William Criswell [Criswell] has been represented by attorney at law Lee Murray Hall [Hall].

August 4, 2009 Givens filed "Notice And Motion For Hearing On Defendant — Non-Delivery Of Service And Non-Disclosure Upon Plaintiff" [DE 146] asserting therein that Defendants Criswell and Randolph and their respective counsel had failed to provide him with service of process of certain documents and or filings and that attorney Hall had "submitted statements of false fact upon this court, and of no intrinsic value as to delivery, instead only certified letters of intentions (not the actual documents), and intimidations upon Plaintiff, ex parte."

For the reasons stated in the Court's Order dated September 4, 2009 [DE 150], Givens Motion [DE 146] was denied.

September 25, 2009 Givens filed his "Notice And Motion For Hearing On Defendant (In Light Of Impending Federal Evidence) Of Non-Delivery Of Service Upon Plaintiff [DE 156] again charging and requesting a hearing on the charges: "Defendant Criswell and Defendant Randolph, and attorneys of record" with "Non-Delivery of Service/Non-disclosure upon Plaintiff", the same allegations made in DE 146. Givens attached Exhibit X to his motion. Exhibit X is Givens' complaint to the West Virginia Lawyer Disciplinary Board against attorney Keith C. Gamble asserting "The U.S. Postal Inspection Service Has Opened Up Criminal Investigation Into The Non-Delivery Of Certified Mail In Reference To Mr. Keith C. Gamble And The Law Firm Of For Mail Tampering/ Mail Fraud, (Case No. CA 100073817) Mr. Keith C. Gamble Willingly And Knowingly Made A False Written Statement Before The Federal Court In Heeling [sic], WV On Eighteenth Day Of September, 2009, On Which The Federal Courts Need To Relay And Act Upon. ..." Attached to the Disciplinary Board Complaint is a document bearing what appears to be the US Postal Logo and purports to be written evidence that the US Postal Inspection Service, Criminal Investigations Service Center had opened an investigation of Keith C. Gamble, Esq. bearing case # CA1000073817 allegedly for fraudulent non-mailing of 8 articles of mail and allegedly falsifying certificates of service of mail and several mailings that allegedly prove Gamble did not file the same with the Court all in the pending litigation.

Randolph, by her counsel Gamble, filed her response [DE 165] on October 6, 2009 contending that Givens' first complaint to the WV Lawyer Disciplinary Board was dismissed and contending that the Postal Inspection Service Document was created by Givens and not by the Postal Inspection Service.

By Order dated October 9, 2009 the Court scheduled Givens motion for hearing on October 20, 2009 [DE 166] noting that the matter may be appropriate for sanctions, including but not limited to attorneys fees under FED. R. CIV. P. 11(b) and (c), <u>In re Kunstler</u>, 914 F.2d 505, 546 (4th Cir. 1990) and <u>Blue v. United States Dep't of Army</u>, 914 F.2d 525, 534 (4th Cir. 1990).

Randolph filed her supplemental response October 16, 2009 [DE 169] pointing out that Plaintiff's own pleadings proved he had received the documents he claims in his motion he had not received, otherwise, how could he have referred to them in his motion and on the alleged Postal Inspection Letter.

Criswell filed his response to the Givens' motion on October 19, 2009 [DE172].

October 20, 2009 Givens, Gamble and Lee appeared before the Court for hearing [DE 176].

October 27, 2009 Givens filed his notice of interlocutory appeal of the oral findings and conclusions made by the undersigned during the October 20, 2009 hearing [DE 178].

On October 29, 2009 the undersigned rendered an Order/Opinion memorializing the findings and conclusions reached as a result of the October 20, 2009 hearing and directing Defendants to file their claims for attorneys fees and costs [DE 185].

October 29, 2009 Randolph filed her motion for attorneys fees and costs in the sum of $1,702.00 under Fed. R. Civ. P. 11(c)(4) and for sanctions [DE 183].

3

October 30, 2009 Criswell filed his motion for attorneys fees and costs in the sum of $1,833.00 under Fed. R. Civ. P. 11(c)(4) and for sanctions under Fed. R. Civ. P. 11(b) [DE 190 and 191].

By Order dated November 13, 2009 the Fourth Circuit Court of Appeals consolidated Givens' notices of interlocutory appeals 178 and 204 [DE 207][1]

By Order dated November 17, 2009 [DE 211] the undersigned continued further proceedings on DE 183, 190, 191 pending the interlocutory appeal of DE 178.

By Order dated May 17, 2010 [270] the undersigned scheduled a motions hearing as to DE 183 and 190.

On May 20, 2010, the undersigned held proceedings on DE 183 and 190.

## II. Pending Issues

1) Rule 11 sanctions are not barred by the safe harbor provision of Rule 11(c)(1)(A).

2) The Court's inherent authority also authorizes sanctions.

3) Givens' conduct is sanctionable.

## III. Discussion

**1) Authority to impose Sanctions**

The defendants have each brought Motions for Fees and Costs Against Plaintiff under FED. R. CIV. P. 11. The defendants point specifically to this Court's holding that *pro se* plaintiff's "Notice and Motion for Hearing on Defendant (in light of impending federal

---

[1] Givens' DE 204 interlocutory appeal of the undersigned's order DE 195 is not directly related to the rulings made in DE 185.

evidence) of Non-Delivery of Service Upon Plaintiff" [DE 156] ("Contested Motion") was not factually supported and thus warrants sanctions in the form of attorney's fees and costs related to the motion.

It is important to note at the outset that "'however inartfully pleaded,' [a pro se complaint] must be held to 'less stringent standards than formal pleadings drafted by lawyers' . . . ." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Nonetheless, "[n]either the liberal pleading rules nor generous *pro se* practices of the courts has eliminated 'the time honored notion that the law and the courts of the United States are important parts of American Society worthy of respect,'" Fenner v. Bell, No. 1:08cv00367, 2009 WL 6372547 n.1 (M.D.N.C. Nov. 13, 2009)(Quoting Theriault v. Silber, 579 F.2d 302, 303 (5th Cir.1978)). "[*P]ro se* status is not a free pass to engage in abusive conduct" *Id.* Nor is it a license to recklessly "disregard the law, particularly where in the process he causes others to incur substantial expenses." In re Burse, 120 B.R. 833, 837 (Bankr.E.D. Va. 1990). (citing to Farguson v. MBank Houston, N.A., 808 F.2d 358, 359 (5th Cir. 1986)). There is nothing in the record as it currently stands which would lead the Court to conclude that the Givens is any more or less legally sophisticated than any other non-lawyer, and thus he will be given the appropriate deference by the Court, but not a "free pass."

**Rule 11**

FED. R. CIV. P. 11's "safe harbor" provision dictates that a Rule 11 motion "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." FED. R. CIV. P. 11(c)(2). This Court has previously interpreted this "safe harbor" provision to not only provide a party the opportunity to cure a defect, but also to preclude Rule 11 motions once a matter has been ultimately decided by the court. Balcar v. Bell & Assocs.,

LLC, 295 F. Supp. 2d 635, 638-39 (N.D.W. Va. 2003)(citing <u>Hunter v. Earthgrains Co. Bakery</u>, 281 F.3d 144, 2002 WL 121565, *4 (4th Cir.2002)).

Further, FED. R. CIV. P. 11(c)(1) states that if "after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or *party* that violated the rule or is responsible for the violation."(emphasis added). *Pro se* litigants are not attorneys. They are parties to their own suit who happen to represent themselves. Therefore, Rule 11 applies to *pro se* litigants who bring pleadings, written motions and other papers before the court.

As previously noted Givens filed a motion [DE 146] requesting a hearing on his assertions that attorneys Gamble and Lee had violated F.R.Civ.P. 5 by not serving him with filings and that Attorney Lee had submitted false statements to the Court which were "of no intrinsic value as to delivery, instead only certified letters of intentions (not the actual documents"), and intimidations upon Plaintiff, ex parte." Givens' DE 146 motion was initially denied by Opinion / Order without a hearing. In the Order the Court found that the documents Givens complained about were letters and were not documents that were required to be filed with the Court; the documents complained of were letters of the type properly exchanged between counsel and an unrepresented party; that none of the documents were ex parte communications; that F.R.Civ.P. 26(c)(1) required counsel to confer with the unrepresented party (Givens) before seeking a protective order from the Court; that Givens was properly served with the documents requiring service by Certified Mail return receipt requested; and that there were no ex parte communications between any party and the Court at any time. [DE 150].

After Givens filed his Notice And Motion For Hearing On Defendant (In Light Of Impending Federal Evidence) Of Non-Delivery Of Service Upon Plaintiff [DE 156], a motion

6

that sought the same relief sought in the previously denied 146 motion, Defendant Randolph filed her response [DE 165] in which she put Givens on notice that: "5) Counsel for this Defendant cannot verify the authenticity of the 'U.S. Postal Inspection Service Federal Investigation Report,' as submitted by the Plaintiff. However, upon information and belief, the document attached is not one created by the U.S. Postal Service, but rather one created by the Plaintiff himself." [DE 165].

Recognizing Givens' DE 156 motion was essentially a repeat of the already decided DE 146 motion, the Court granted Givens a hearing, and put him on notice that the matter may be appropriate for Rule 11 sanctions. The record as it stands shows that Givens did not withdraw or amend his complaint within 21 days of [DE 166].

During the hearing, Givens offered no evidence other than his own conjecture as to who had fabricated the "United States Postal Inspection Service Criminal Investigation Unit" document. [DE 213]. Instead, he finally admitted fabricating the document after maintaining throughout most of the hearing either that he did not know what the logo was or that his delivery person or someone at the library must have cut and pasted the USPO logo on the document. *Id*. at 18-23, 68-79, 94-98 and 106-109. At the conclusion of the hearing, the undersigned denied DE 146 and DE 156 on substance and put Givens on notice that the Court would investigate sanctions against him for his conduct. [DE 213] at 116. The defendants' counsels made a motion for costs which the undersigned entertained and ordered statements for costs be submitted to the Court and to Givens' within ten days of the hearing. [DE 213].

Neither the plaintiff's original complaint nor the defendants' Motions for Summary Judgment have been ruled on by the District Court. DE 1, DE 217, DE 221[2]. Furthermore, the plaintiff has not withdrawn his Challenged Motion within the twenty-one day limit. Consequently, the defendants' Rule 11 motions are not precluded and this Court may proceed with its analysis of whether the plaintiff's actions relating to his Contested Motion are sanctionable.

FED. R. CIV. P. 11(b) is a conjunctive four part rule[3] which states, in pertinent part that:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>     (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
>     \* \* \*
>
>     (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;
>
>     \* \* \*

A failure of any prong of the rule indicates a sanctionable act by a litigant. The first prong of the test deals with "improper purpose," and sets forth a non-exhaustive list of such purposes, including harassment. The third prong discusses whether the signer of the document

---

[2] The District Judge, by letter, indicated the way he was considering ruling, but no order actually so ruling has been entered.

[3] In this case, the Court examines Givens' behavior under two of the four prongs.

put before the court did so knowing that his/her assertion was grounded in fact, thus having merit.

The Fourth Circuit has held that the when determining "improper purpose," the court "must judge the conduct of counsel under an objective standard of reasonableness rather than assessing subjective intent. In re Kunstler, 914 F.2d 505, 518 (4th Cir. 1990). With regard to harassment "it is not enough that the injured party subjectively believes that a lawsuit was brought to harass, or to focus negative publicity on the injured party; instead, such improper purposes must be derived from the motive of the signer [of the complaint] in pursuing the suit." *Id.* at 518-19. Thus, "it is appropriate to consider the signer 's subjective beliefs to determine the signer's purpose in filing suit, if such beliefs are revealed through an admission that the signer knew that the motion or pleading was baseless but filed it nonetheless." *Id.* at 519.

As a consequence, the court must examine the intent of the signer in order to properly assess whether his sole purpose was to harass, or whether his intent to harass "was so excessive as to eliminate any proper purpose." Ballentine v. Taco Bell Corp., 135 F.R.D. 117, 125 (E.D.N.C. 1991)(Applying Kunstler). In so doing, the court must examine the pre-signing investigation made by the signer under an objective standard to assess whether the signer's motion is well grounded in fact and law and therefore meritorious. Kunstler at 519. In other words, Kunstler stands for the proposition that the court must look objectively at evidence that the signer subjectively believed the motion he/she put forth is based on fabrication or oversight, not fact. *Id*. *See* McGlothlin v. Murray, 54 F. Supp. 2d 629 at 635 (W.D. Va. 1999)(Holding that Rule 11 sanctions against a pro se litigant were appropriate where the plaintiff "may have, or should have, known that the true factual circumstances underlying those claims would eventually reveal the lawsuits to have very little merit."); *See also* Durant v. Traditional Invs., Ltd., 135

F.R.D. 42, 49–50 (S.D.N.Y. 1991)(Factoring in the *pro se* plaintiff's level of sophistication as well as his "factual misrepresentation, both by commission and omission, the impropriety of which should be known to lawyers and non-lawyers alike," before deciding that Rule 11 sanctions were appropriate).

Here, Givens has admitted to fabricating evidence in order to support his motion[4]. [DE 213] (Transcripts of motion hearing) at 68-82.  Moreover, when given the opportunity by the Court to remedy the situation, the plaintiff maintained his lie. [DE 213] at 107.  Finally, in examining the Contested Motion and the subsequent hearing transcripts, it is clear that Givens was fully aware of the existence of the documents for which he asserted that he had never received. [DE 213] at 115-16; *see also* "mail log" [DE 156-1] at 4-5. This is not the first time Givens has been admonished for improper conduct. He admitted he had been previously admonished by the Ohio State Bar for the unauthorized practice of law. [DE 213] at 87-89.  All of these facts point to the inevitable conclusion that either Givens intended to harass opposing counsel by way of his motion, that Givens knew his motion was without a basis in fact yet still filed his complaint, or both.  In any case, the above discussed behavior is clearly in violation of FED. R. CIV. P. 11(b) and thus warrants sanctions.

**Inherent Authority of the Court**.

Though not put forth by the defendants, the Court also notes that in the Fourth Circuit,

---

[4] The Court also notes that the plaintiff filed ethics complaints against the defendants' counsel in relation to his Contested Motion. In filing those complaints, plaintiff also relied on the same fabricated evidence of a purported "postal investigation."  While "[r]ule 11 does not encompass all conduct within judicial proceedings, and it clearly does not reach conduct outside of the judicial process,"Givens conduct outside of this tribunal is instructive as to his true intentions within it. Kunstler, 914 F.2d at 525 (Quoting Oliveri v. Thompson, 803 F.2d 1265, 1274 (2d Cir.1986), cert. denied, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987)).

the court may "sanction for bad faith conduct via [it's] inherent authority," even when "no particular procedural rule invests the court with the power to sanction." Balcar, 295 F. Supp. 2d at 640(Citing Strag v. Bd. of Tr., 55 F.3d 943, 955 (4th Cir.1995)). In particular, as also noted in Balcar, the Court may sanction a party "if [it] finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled.'" Chambers v. NASCO, Inc, 501 U.S. 32 at 46, (1991)(quoting Universal Oil Prod. Co. v. Route Ref. Co., 328 U.S. 575, 580, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946)).

As Balcar further points out, the Fourth Circuit has not spoken on the issue of which "narrowly defined" circumstances the court may apply its inherent power to sanction. Balcar, 295 F. Supp. 2d at 640. However, like other circuits, the Fourth Circuit would likely require "clear and convincing evidence of bad faith and vexatious behavior" prior to applying the substantial sanction power inherent in the court. *Id*.

In Balcar, the *pro se* plaintiff initiated a law-suit against his insurer but brought the claim in the wrong court. *Id.* at 638. The plaintiff then engaged in a subsequent lawsuit in another jurisdiction but his case was dismissed on statute of limitation grounds. *Id.* He brought suit again in the original jurisdiction but the Court dismissed on collateral estoppel/res judicata grounds. *Id.* Upon an unsuccessful appeal to the Fourth Circuit, the plaintiff filed his complaint yet again in spite of the Court's advising him in "clear and convincing" terms that his claim was without merit. *Id.* at 642. This Court found that the evidence on the record clearly and convincingly showed that the plaintiff's conduct "exemplified" bad faith or vexatious conduct and thus sanctions under the Court's inherent power were appropriate. *Id*. at 640-41.

Similarly, Givens has engaged in conduct that he knows or should know is vexatious and in bad faith. 1) He Knowingly claimed and persisted to a hearing on his claims that he did not

11

receive mailings from opposing counsel when his own filings show that he did. [DE 156-1] at 4-5;  2) he claimed to have caused the United States Post Office ("USPO") to open a criminal investigation on defense counsel for the alleged missing mailings. *Id.*;  3) he fabricated documentation to make it appear that the USPO had opened a criminal investigation. *Id.*; *see also* DE 185 at 12;  4) he filed the fabricated document with the Court to support his claim that he was not receiving mailings from defense counsel. [DE 156-1] at 4-5;  5) he argued that the fabricated USPO document supported his claim that he was not receiving mailings from defense counsel. [DE 213];  and 6) he continued the argument even after the Court forced him to admit there was no other way for the USPO logo to have been put on the document except by his hand. [DE 213].

The record evidence clearly and convincingly proves that Givens knew precisely what he was doing when he both fabricated the document and filed it with his Contested Motion. Accordingly, this Court concludes that the plaintiff's actions are sanctionable under both Rule 11 and the Court's inherent authority.

**2) Assessment of Sanctions under Federal law.**

The Court now turns to what types of sanctions are appropriate under the specific facts of this case.  Here, the Defendants have asked for sanctions in the form of attorney's fees and costs as a result of Givens' egregious conduct.

The Fourth Circuit has announced that under Rule 11 when, a "monetary award is issued, a district court should explain the basis for the sanction so a reviewing court may have a basis to determine whether the chosen sanction is appropriate.  A district court should consider . . . (1) the reasonableness of the opposing party's attorney's fees;  (2) the minimum to deter;  (3) the ability to pay;  and (4) factors related to the severity of the Rule 11 violation." <u>Kunstler</u>, 914

F.2d at 523; *See also* Balcar, 295 F. Supp. 2d 635 (Applying the Kunstler factors to sanctions issued under a courts "inherent authority.")

Taking each factor in turn, it is clear that monetary sanctions are appropriate here. First, the attorney's fees were reasonably necessary and are reasonable in amount for the area and the work done. Even Givens did not meaningfully challenge the fees when the Court gave him the chance to do so. [DE 270]. Second, the sanctions this Court chooses will serve a deterrent function without being unduly punitive. Next, the Givens' *in forma pauperis* status, while thoroughly contemplated by the Court in making its decision, does not serve as an absolute shield from sanctions. Moreover, even though Givens has been granted *in forma pauperis* status, he testified he makes sales calls and performs service for the vending business he operates. [DE 213] at 6. Finally, the totality of the circumstances, and the particularly egregious behavior of the plaintiff insofar as he committed a fraud upon this Court, warrant money sanctions and any other sanctions the Court may consider.

As this Court noted in Balcar, the primary objective in sanctioning a plaintiff is deterrence. Balcar, 295 F. Supp. 2d at 641. In the Fourth Circuit, importance is also placed upon ensuring that the possibility of sanctions do not have a chilling effect on litigants bringing forth "facially valid lawsuits." Kunstler, 914 F.2d at 524; *See also* Trimper v. City of Norfolk, Va., 58 F.3d 68, 73 (4th Cir. 1995)(Attenuating sanctions in light of the overarching purpose of a civil rights claim to provide "effective access to the judicial process for persons with civil rights grievances without simultaneously producing windfalls to the attorneys.")

The Court has examined the defendant's motions for fees along with their supporting documentation and invoices. Moreover, the Court held a hearing with all parties and gave the plaintiff a full and fair opportunity to object to the defendant's fees. [DE 270].

13

Considering the Fourth Circuit has held that "the primary purpose of sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for its costs in defending a frivolous suit. . . . the limit of any sanction award should be that amount reasonably necessary to deter the wrongdoer." In re Kunstler, 914 F.2d at 524.(Citing to White v. General Motors Corp., 908 F.2d 675 (10th Cir.1990))(Internal quotations omitted). Here, the Court finds that the aggregate amount of $1,000, a small portion of that which is being sought by the defendants' counsel, is appropriate to serve the purpose of deterring future abuses of the court by Givens.

Third, the Court must consider the ability of the sanctioned litigant to pay. Because sanctions are, at their core, punitive, the financial condition of the sanctioned party is "appropriate consideration in the determination of" the amount of sanctions to impose upon them. *Id*. In cases where the financial status of the sanctioned litigant warrant it, a reduction in the amount of sanctions is appropriate. *See e.g.* McGlothlin 54 F. Supp. 2d 629 (Holding that the reduction of attorney's fees awarded to defendants from $28,719.25 to $900 was appropriate in light of plaintiff's inability to pay and out of concern that large award would discourage other inmates with viable claims.); *See also* Introcaso v. Cunningham, 857 F.2d 965, 967 (4th Cir. 1988). (holding that although plaintiff's lawsuit was frivolous, unreasonable, and without foundation, an award of ten percent of the total fees that the defendant incurred was appropriate in recognition of the "possible chilling effect which a large award for attorneys' fees may have on future plaintiffs who may desire to resort to the Courts to vindicate their rights.")

As noted above, Givens is before the Court *in forma pauperis*. The Court need not consider any additional evidence of his financial status in order to determine the effect of monetary damages upon him. However, as noted herein, the Court does consider Givens'

testimony that he owns and operates a vending business and is therefore able to sustain himself and his family in their Ohio residence while working for his non-profit charity. [DE 213] at 6.

Finally, the Court must consider the behavior of the litigant which led to the sanctions. "[T]he court may consider factors such as the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation . . . ." Kunstler 914 F.2d at 524. In Kunstler, the court considered "the outrageous and scandalous nature of the claims made, and the improper purpose of the lawsuit" in making its determination that an award of attorney's fees was appropriate. *Id.* at 525. Similarly, in Balcar, the Court examined the *pro se* plaintiff's repeated disregard for court orders in making its final determination that although he was *pro se*, "plaintiff's conduct throughout the course of the litigation [left the court] with no alternative than to sanction him with the hope that such sanctions [would] deter him from future abusive and repetitive litigation . . . ." Balcar 295 F. Supp. At 642.

In as much as this Court has found that Givens proffered false evidence; he lied about it both within and outside of the Tribunal; pursued his false claims to hearing after being given ample opportunity to withdraw from the fray; pursued his claim in and beyond this Court (to the State Bar Office of Disciplinary Counsel) solely to harass counsel and increase defendants' costs in this litigation, a sanction of $1000 is appropriate.

## V. Order

It is accordingly **ADJUDGED** and **ORDERED** that MOTION for Attorney Fees and Costs Against Plaintiff by Rebecca Randolph (dckt. 183) be **GRANTED** and that MOTION for Attorney Fees by William Criswell. (dckt. 190) be **GRANTED.** Givens is to pay William Criswell's defense counsel, Lee Hall, $500 within ten months of the Order. Givens is to pay Rebecca Randolph's defense counsel, Keith Gamble, $500 within ten months of the Order.

The Clerk of the Court is directed to mail a copy of this Order/Opinion to counsel of record via electronic means and to Greg Givens, Plaintiff *pro se,* by Certified United States Mail. The Clerk is further directed to remove DE 183 and 190 from the docket of motions actively pending before this Court.

DATED: June 24, 2010.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE