IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

GREG GIVENS,

      Plaintiff,

v.                                  Civil Action No. 5:08CV25
                                             (STAMP)

MAIN STREET BANK,
WILLIAM CRISWELL,
REBECCA RANDOLPH,
UNITED BANK - WHEELING,
UNITED BANK - DUNBAR,
ROSELYN J. CANTINI,
OHIO COUNTY WEST VIRGINIA/
OHIO COUNTY PROSECUTOR OFFICE,
WHEELING POLICE DEPARTMENT,
and JOHN DOE 1,
individually and collectively,

      Defendants.


<u>MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT REBECCA RANDOLPH'S
MOTION FOR LEAVE TO FILE EXCESS PAGES;
GRANTING DEFENDANT REBECCA RANDOLPH'S
MOTION FOR SUMMARY JUDGMENT;
GRANTING DEFENDANT WILLIAM CRISWELL'S
MOTION FOR SUMMARY JUDGMENT;
DENYING AS MOOT DEFENDANT REBECCA RANDOLPH'S
MOTION TO DISMISS;
DENYING AS MOOT DEFENDANT WILLIAM CRISWELL'S
MOTION TO DISMISS;
DENYING AS MOOT THE PLAINTIFF'S
AND THE DEFENDANTS' MOTIONS IN LIMINE;
DENYING AS MOOT THE DEFENDANTS' MOTIONS
FOR JOINDER IN MOTIONS IN LIMINE;
DENYING THE PLAINTIFF'S MOTION TO CHANGE VENUE;
DENYING THE PLAINTIFF'S MOTION FOR APPOINTMENT OF ATTORNEY
PURSUANT TO 42 U.S.C. § 1988; AND
DISMISSING WITHOUT PREJUDICE DEFENDANT JOHN DOE 1</u>

I.  Procedural History

The plaintiff, Greg Givens ("Givens"), proceeding pro se,[1] filed the above-styled civil action in this Court alleging various federal constitutional and civil rights violations, as well as various state causes of action against defendants Main Street Bank, William Criswell ("Criswell"), Rebecca Randolph ("Randolph"), United Bank, United Bank - Dunbar, Roselyn J. Cantini, Ohio County West Virginia/Ohio County Prosecutor Office, Wheeling Police Department, and John Doe 1.[2]  Specifically, Givens' complaint asserted:  (1) civil conspiracy pursuant to 42 U.S.C. § 1983; (2) unlawful actions regulated under federal law; (3) abuse of process; (4) breach of express duties; (5) malicious prosecution; (6) endangerment of and injury to the plaintiff; and (7) infliction of emotional distress.

On September 25, 2008, this Court entered a memorandum opinion and order dismissing with prejudice the claims as to defendants United Bank, United Bank - Dunbar, Roselyn Cantini, Ohio County

_____

[1]"Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer.  Black's Law Dictionary 1341 (9th ed. 2009).

[2]The plaintiff has not moved to amend his complaint to identify John Doe 1.  Federal Rule of Civil Procedure 4(m) requires dismissal if the "defendant is not served within 120 days after a complaint is filed."  Because the plaintiff has not yet named this party in an amended complaint or served this unnamed defendant with a summons within 120 days or moved this Court to extend the period in which to name the defendant, it is ORDERED that defendant John Doe 1 be DISMISSED WITHOUT PREJUDICE as a defendant in this action.

West Virginia/Ohio County Prosecutor Office. On April 24, 2009, this Court entered a memorandum opinion and order dismissing with prejudice defendants Main Street Bank and Wheeling Police Department. After this Court dismissed those defendants, the remaining claims included the plaintiff's § 1983 claim for civil conspiracy relating to prosecution without probable cause and the plaintiff's state law claims against defendant Randolph and defendant Criswell.

Thereafter, on January 29, 2010, the remaining defendants filed separate motions for summary judgment. Defendant Randolph filed a motion for leave to file excess pages. The plaintiff filed a response to these motions and each defendant filed a reply. By letter dated March 9, 2010, this Court advised the parties of tentative rulings on the defendants' motions to dismiss, defendant Randolph's motion to exceed page limit, the parties' motions in limine, and the defendants' motions to dismiss. The letter also stated this Court's ruling to dismiss John Doe 1. This memorandum opinion and order sets forth those rulings in more detail. That letter stated that the letter should not be considered as an order or a memorandum of opinion that could be appealed. The plaintiff then filed an interlocutory appeal regarding the letter. On June 18, 2010, the plaintiff filed a motion to change venue. On June 25, 2010, the plaintiff filed a motion for appointment of an attorney pursuant to 42 U.S.C. § 1988. On July 21, 2010, the

United States Court of Appeals for the Fourth Circuit denied the plaintiff's interlocutory appeals, stating that the orders the plaintiff sought to appeal were neither final orders nor appealable orders.

This Court has reviewed the parties' pleadings and the relevant law and believes that a decision on the merits on each of the defendant's motion for summary judgment is warranted. For the reasons that follow, defendant Randolph's motion for leave to file excess pages is granted. Defendant Randolph's motion for summary judgment is granted. Defendant Criswell's motion for summary judgment is granted. Further, because this Court grants both defendant Randolph and defendant Criswell's motions for summary judgment, the plaintiff's and each of the defendant's motions in limine,[3] as well as defendant Criswell and defendant Randolph's motions to dismiss, which are also currently pending before this Court, are denied as moot. This Court denies both the plaintiff's motion for change of venue and the plaintiff's motion for appointment of an attorney. Finally, John Doe 1 is dismissed without prejudice because the plaintiff did not file an amended complaint identifying this defendant.

---

[3]The parties' motions in limine include Document Nos. 225, 229, 230, 231, 232, 233, 234, 235, 236, 241, and 242. The defendants' motions for joinder in each other's motions in limine are also denied as moot: Document Nos. 237, 238, 239, 240, 243, 244, 245.

II.  <u>Facts</u>

The plaintiff's grandfather, Joseph Givens, retired from employment as a railroad worker.  The United States Treasury ("Treasury") sent monthly retirement checks to Joseph Givens and Joseph Givens authorized his grandson to sign on his checking account with Main Street Bank.  On March 26, 2007, Joseph Givens died.  The Treasury, however, issued a retirement check to Joseph Givens on April 2, 2007.  The plaintiff presented the April 2 check for payment to Main Street Bank on April 4, 2007 with a signature endorsing the check reading "Joseph V. Givens."

After cashing the check, Mellon Bank contacted defendant Randolph, an employee of Main Street Bank, to inform her that Joseph Givens died prior to the Treasury issuing the check.  Mellon Bank told Randolph that the Treasury sought reimbursement for the check.  Randolph attempted to contact the plaintiff, but could not reach him.  Randolph then told the tellers at the bank to notify her if the plaintiff came into the bank.

The plaintiff did arrive at Main Street Bank on July 12, 2007 at 5:01:44 p.m.  A teller informed Randolph of the plaintiff's arrival.  At 5:03:06 p.m., Randolph and another employee met the plaintiff.  She told him that Mellon Bank requested reimbursement.  The plaintiff told Randolph that Joseph Givens did not die until after the issuance of the check.  Randolph told the plaintiff to bring a death certificate to the bank.  This conversation lasted

seven minutes.  The doors to the bank were unlocked from the inside and the plaintiff was free to leave.  At 5:09:54 p.m., the plaintiff and Randolph shook hands and the plaintiff left the bank at 5:09:55 p.m.

The plaintiff faxed Randolph a letter enclosing Joseph Givens' death certificate, which indicated April 26, 2007 as the date of death.  Randolph sent this death certificate to Mellon Bank, which then informed her that the death certificate listed the incorrect date of death.  Randolph then called Bauknecht-Altmeyer Funeral Homes to inquire about Joseph Givens' date of death.  The funeral home sent Randolph a death certificate with March 26, 2007 as the date of death.  This date discrepancy led Randolph to believe that the plaintiff engaged in criminal activity.  She subsequently contacted the Wheeling Police Department.

The Wheeling Police Department sent defendant Criswell to investigate the matter.  On August 20, 2007, Criswell and Randolph met at Main Street Bank to discuss the issue.  Criswell and Randolph did not know each other prior to this meeting.  During this meeting, Randolph informed Criswell of the facts, but did not suggest a course of action for him to take.  Randolph provided Criswell with copies of the check, the letters from the plaintiff, the plaintiff's affidavit, the death certificate provided by the plaintiff, and the information provided by the funeral home.  After investigating, Criswell prepared an Incident Investigation Report

and forwarded it to the Ohio County Prosecutor's Office. Shawn Turak ("Turak"), the prosecutor for Ohio County, West Virginia, advised Criswell to charge the plaintiff with the state law offense of uttering. Criswell prepared and forwarded a criminal complaint to the Ohio County Magistrate, who found probable cause to issue an arrest warrant for the plaintiff. Ohio County forwarded the warrant to the Shadyside Ohio Police Department. The Shadyside Police Department arrested the plaintiff and extradited him to West Virginia.

Turak dropped the uttering charge without prejudice at a preliminary hearing. Turak instead decided to seek an indictment by an Ohio County grand jury. A grand jury indicted the plaintiff on January 14, 2008 with uttering, uttering a forged public record, and fraudulent schemes, all in violation of West Virginia law. Doctors at William R. Sharpe, Jr. Hospital evaluated the plaintiff. The state court dismissed the charges after it found that the plaintiff was not competent to stand trial and not substantially likely to attain competency.

Defendant Randolph served requests for admissions on the plaintiff on October 19, 2009. In the document, Randolph clearly states that failure to respond within thirty days would deem the statements admitted. The plaintiff did not respond. Therefore, by operation of law and Federal Rule of Civil Procedure 36, the following statements are deemed admitted:

Admit that a criminal complaint was filed against you, case No. 07F236 captioned as <u>State of West Virginia v. Greg Givens</u>, which charged you with violation of West Virginia Code 51-4-5(a);

Admit that the criminal charges brought against you in case No. 07F236 were dismissed because the Court found you incompetent to stand trial;

Admit that you mailed a death certificate for your grandfather, Joseph Vadala Givens, to Rebecca Randolph following a question about a bank account at Main Street Bank;

Admit that the criminal charges brought against you in case No. 07F236 were dropped for a reason other than your innocence of the criminal charges contained in the Complaint;

Admit that Rebecca Randolph did not violate any of your civil rights;

Admit that you have not been present for any conversations between William Criswell and Rebecca Randolph;

Admit that any conversations overheard between Defendants Randolph and Criswell could have been taken out of context and are not indicative solely of a conspiracy to deprive you of your civil rights.

III.  <u>Applicable Law</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23

(1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. <u>See</u> <u>Oksanen v. Page Mem'l Hosp.</u>, 912 F.2d 73, 78 (4th Cir. 1990), <u>cert. denied</u>, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

This Court has carefully reviewed the parties' motions and related memoranda, and because the plaintiff is <u>pro se</u>, this Court has liberally construed the plaintiff's pleadings. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519 (1971) (holding <u>pro se</u> complaint to less stringent standards than formal pleadings drafted by lawyers).

IV. <u>Discussion</u>

A. <u>Defendant Randolph's Motion for Summary Judgment</u>[4]

    1. <u>Civil Conspiracy</u>

Givens alleges that defendant Randolph conspired with others, either Turak or Criswell, to make knowingly false statements to initiate a prosecution against Givens without probable cause. By

---

[4]Defendant Randolph filed a motion to exceed the page limit as prescribed by Local Rule of Civil Procedure 7.02(b) for her memorandum in support of her motion for summary judgment. For good cause shown, defendant Randolph's motion is hereby GRANTED.

failing to respond to defendant Randolph's request for admissions, the plaintiff admitted that Randolph did not violate his civil rights. Therefore, he cannot bring a claim for civil conspiracy under 42 U.S.C. § 1983. This Court notes that even with the liberality given to a <u>pro se</u> plaintiff, it cannot ignore the plaintiff's failure to respond. The plaintiff is aware of the Federal Rules of Civil Procedure. His filings in this civil action reference the Federal Rules and he filed various motions to compel and served requests for admissions on both Randolph and Criswell. Further, Randolph clearly stated in the discovery request that a matter is deemed admitted unless answered or objected to within thirty days.

However, even if this Court were not to accept the plaintiff's clear admission that Randolph did not violate his civil rights, the plaintiff's claim must fail on the merits. Section 1983 provides:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizens of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. A private party who conspires with a state actor to violate a person's civil or constitutional rights may, under very limited circumstances, be subject to liability under § 1983. <u>Hassami v. Corporation of Ranson</u>, 170 F. Supp. 2d 626, 634 (N.D. W. Va. 2001). "[T]o sustain such a claim, the plaintiff must allege

11

facts showing an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right." Id. The plaintiff has the burden of demonstrating that: "(1) a state official and private individual reached an understanding to deprive the plaintiff of his constitutional rights, and (2) the individual was a willful participant in joint activity with the State or its agents." Id. Even where state actors are immune from suit under qualified immunity, private actors who conspire with state actors to deprive an individual of his or her civil or constitutional rights are not derivatively entitled to the protections of qualified immunity. Dennis v. Sparks, 449 U.S. 24 (1980). However, a private party who merely invokes state legal procedures does not create or become part of a conspiracy with state officials under § 1983. Hessami, 170 F. Supp. 2d at 634. Thus, a private actor does not take joint action under color of state law and thereby become liable under § 1983 merely by furnishing information to police officers who then act upon that information. See id. See also Lee v. Town of Estes Park, 820 F.2d 1112, 1115 (10th Cir. 1987); Cruz v. Donnelly, 727 F.2d 79 (3d Cir. 1984).

The plaintiff cannot show that there was an agreement or a meeting of the minds between Randolph and a state actor to engage in a conspiracy to violate the plaintiff's constitutional rights. The plaintiff makes several conclusory statements, but his vague

and general allegations, without evidence, cannot survive a motion for summary judgment. The plaintiff bases his claim of conspiracy on two verbal exchanges, one between Randolph and Turak, the other between Randolph and Criswell, which the plaintiff alleges provided an opportunity for them to reach an agreement to deprive him of his constitutional rights.

The first exchange occurred on January 2, 2008 at the plaintiff's Ohio County preliminary hearing between Randolph and Turak. The plaintiff's deposition testimony provides that he did not witness an alleged conversation between Randolph and Turak, but heard a muffled conversation.[5] He alleges that the words, "exchange for money" and "Givens" were spoken, but he could not identify whose voice said those words. This deposition testimony conflicted with prior pleadings where the plaintiff stated that he witnessed firsthand this alleged conversation where Turak allegedly stated, "let me know if we get the money from Givens." On April 22, 2008, Dennis Givens, the plaintiff's uncle, swore in an affidavit that he witnessed the completion of an agreement between

---

[5]The plaintiff, in his response to the defendants' motions for summary judgment, asks this Court to ignore his deposition testimony. He alleges that his deposition was taken under conditions of duress and that he believed he no longer had any rights and that he was under criminal interrogation and would be charged with a federal crime if he did not answer the questions in the exact way defense counsel wanted. This Court finds no reason to disregard the plaintiff's sworn testimony during his deposition and will consider the statements that the plaintiff made under oath in its consideration of the defendants' motions for summary judgment.

Turak and an official from Main Street Bank concerning his nephew. He said Turak stated, "let me know if WE get the money from Givens." Plaintiff's Memorandum in Opposition to Defendants' Motions to Dismiss; and Defendants' Motion(s) for More Definite Statement at 4 (Docket No. 57). In his response to the motion for summary judgment, the plaintiff included a second affidavit from his uncle dated February 18, 2010 stating that he witnessed Randolph and Turak conspiring to deprive the plaintiff of his constitutional rights "by overhearing mutual exchange and understanding to carry out a clear means to exchange criminal charges and testimony for the demand for money not owed to Main Street Bank." This new affidavit, submitted by the plaintiff after discovery closed, will be considered by this Court. Nothing stated in the affidavit leads this Court to conclude that there is a genuine issue of material fact as to this issue. Dennis Givens' affidavit is far too conclusory. He does not explain how what he allegedly overheard was an agreement of the minds to form a civil conspiracy. This Court finds that "[s]uch conclusory assertions need not be accorded any evidentiary weight." Dennison v. Carolina Payday Loans, Inc., 549 F.3d 941, 945 n.3 (4th Cir. 2008) (citing McHone v. Polk, 392 F.3d 691, 703-04 (4th Cir. 2004)). Both Turak and Randolph denied the substance of the conversation Dennis Givens allegedly overheard ever occurred. The fact that Randolph and Turak spoke before a criminal hearing is not surprising. Randolph

14

was present at the hearing as a witness pursuant to a subpoena. Randolph provided Turak with factual information related to the criminal charge. Randolph and Turak possibly discussing the topic of restitution does not implicate a civil conspiracy. Turak also makes clear that the decision to prosecute was her decision alone.

The second conversation occurred between Randolph and Criswell on August 20, 2007 when Criswell came to Main Street Bank to investigate the uttering charge. The plaintiff was not present for any conversation between Criswell and Randolph. Affidavits of Criswell and Randolph show that the two did not know each other prior to August 20, 2007. They did not meet with each other at any other time. Randolph provided Criswell with factual information regarding the incident. They each state in affidavits that they did not plan to engage in a conspiracy to deprive the plaintiff of his constitutional rights. Additionally, Criswell stated in an affidavit that Randolph did not suggest a course of action or a manner in which to carry it out. The plaintiff produced no evidence to show that Criswell and Randolph entered a conspiracy. The plaintiff admitted, by operation of law, that he was not present for any conversation between Criswell and Randolph. As mentioned above, providing factual information to the police does not implicate a person in a civil conspiracy. Hessami, 170 F. Supp. 2d at 634. The only error in the report is the plaintiff's

date of birth. This error does not create a genuine issue of material fact.

According to the deposition testimony and affidavits, there is no suggestion that there was an agreement to conspire between Randolph and any state actor. Randolph, Criswell, and Turak have all denied the existence of an agreement or that they were acting as a team to violate the plaintiff's constitutional rights. Further, the deposition of Dennis Givens that this Court received after discovery closed is insufficient to raise a genuine issue of material fact as to the existence of a conspiracy.

The plaintiff has failed to demonstrate that defendant Randolph reached an understanding to deprive him of his constitutional rights. Because the plaintiff has failed to establish the existence of any genuine issue of material fact and, as a matter of law, has failed to state a claim of civil conspiracy, defendant Randolph's motion for summary judgment as to this claim must be granted.

2.  Abuse of Process and Breach of Express Duties

In West Virginia, "abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." Syl. pt. 3, Williamson v. Harden, 585 S.E.2d 369 (W. Va. 2003). In contrast to actions for malicious prosecution and false imprisonment, an action for abuse of process "lies for the improper

use of a regularly issued process, not for maliciously causing process to issue, or for an unlawful detention of the person." Id. at 372. The plaintiff must prove "a willful and intentional abuse or misuse of the process for the accomplishment of some wrongful object--an intentional and willful perversion of it to the unlawful injury of another." Id. at 373 (quoting Preiser v. MacQueen, 352 S.E.2d 22, 28 (W. Va. 1985)).

"Breach of Express Duties" is not a cognizable claim in West Virginia. However, the claim the plaintiff seeks to bring appears similar to a claim for abuse of process under West Virginia law. In this case, while Randolph did not file any suit against the plaintiff or request a court to take any action, she did contact the police to investigate a crime. This action on her part, however, does not constitute an abuse of process. Randolph works in a bank and had reason to believe that the plaintiff committed a crime. A person who has probable cause a crime has been committed and calls the police to investigate that possible crime has not committed a willful and intentional abuse or misuse of the process for the accomplishment of some wrongful object.

Because the plaintiff has failed to establish the existence of any genuine issue of material fact and, as a matter of law, has failed to state a claim of abuse of process or breach of express duties, defendant Randolph's motion for summary judgment as to this claim must be granted.

3.  Malicious Prosecution

To maintain an action for malicious prosecution in West Virginia, "it is essential to prove: (1) That the prosecution was malicious; (2) that it was without reasonable or probable cause; and (3) that it terminated favorably to plaintiff." Clark v. Druckman, 624 S.E.2d 864, 870-71 (W. Va. 2005) (quoting Syl. pt. 1, Lyons v. Davy-Pocahontas Coal Co., 84 S.E. 744 (W. Va. 1915)). West Virginia courts define malicious as "'substantially certain to cause injury' and 'without just cause or excuse'" Id. (quoting Black's Law Dictionary 977 (8th ed. 2004)). This definition of malicious implies the intent to do harm or an improper or evil intent. Id.

The plaintiff has not produced evidence sufficient to create a genuine issue of material fact as to his claim for malicious prosecution. Malice and probable cause become questions of law in civil malicious prosecution cases "where there is no conflict of evidence or where there is only one inference to be drawn by reasonable minds." Morton v. Chesapeake & Ohio Ry. Co., 399 S.E.2d 464, 467 (W. Va. 1990). In this case, Randolph did not display malicious intent in reporting the alleged crime to the Wheeling Police Department. Randolph believed she observed the crimes of uttering and forgery of a public record. Mellon Bank informed Randolph that the death certificate submitted by the plaintiff contained the wrong date of death. The funeral home confirmed that

18

the death certificate did not provide the correct date of death. Randolph made a reasonable inference that the plaintiff forged his grandfather's death certificate and committed the offense of uttering by cashing a check from the Treasury he was not entitled to cash. Randolph then reported those crimes to Officer Criswell who then presented the information to the prosecutor and a magistrate, who found probable cause and issued an arrest warrant. As a matter of law, the plaintiff has failed to show malice on the part of Randolph. Further, the plaintiff cannot show that the charges were dismissed in his favor. While no conviction resulted from the state charges, the charges were dropped because of the plaintiff's lack of capacity to stand trial.

Because the plaintiff has failed to establish the existence of any genuine issue of material fact and, as a matter of law, has failed to state a claim of malicious prosecution, defendant Randolph's motion for summary judgment as to this claim must be granted.

    4.    <u>Endangerment of and Injury to the Plaintiff</u>

"Endangerment of and Injury to the Plaintiff" is not a recognized cause of action in West Virginia. The plaintiff has failed to produce any evidence sufficient to support this claim. Accordingly, this claim is dismissed for the plaintiff's failure to show a genuine issue of material fact as to endangerment of and injury to the plaintiff.

5.   <u>Infliction of Emotional Distress</u>

To prevail on a claim for intentional infliction of emotional distress, a plaintiff must show the following four elements:

(1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

<u>Travis v. Alcon Laboratories, Inc.</u>, 504 S.E.2d 419, 425 (W. Va. 1998).

The first prong requires that the plaintiff show atrocious conduct; it must be more than unkind or unfair.  <u>Id.</u>  "[C]onduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct." <u>Courtney v. Courtney</u>, 413 S.E.2d 418, 423 (W. Va. 1991). Here, the plaintiff has shown no evidence of conduct that an average member of the community would find outrageous. <u>Travis</u>, 504 S.E.2d at 428.  At this stage of the litigation process, the plaintiff cannot rely on conclusory allegations from his complaint. During his deposition, the plaintiff alleged that when Randolph confronted him in the bank, she was aggressive and threatened him and would not allow him to leave the bank.  He states that she was yelling at him and waiving documents in her hand.  He alleges that she demanded he produce documents to cover up the mess that he

created for Randolph. He further states that she escorted him to the doors and looked around to see if there were any witnesses before she unlocked the doors.

Here, the surveillance video still frames attached as exhibits to Randolph's motion for summary judgment do not show any type of an altercation. The plaintiff is shown shaking Randolph's hand prior to leaving. The video then shows the plaintiff leaving the bank without incident. The plaintiff's allegations do not create a genuine issue of material fact as there is no actual evidence to maintain a claim for intentional infliction of emotional distress. A bank employee neither approaches atrocious conduct nor does she exceed the boundaries of decency when she confronts a customer about possible uttering or forgery. The evidence in this case shows that the plaintiff and Randolph were in no form of an altercation that exceeded the boundaries of decency. Further, the plaintiff has produced no evidence to support the other prongs of the test as well. Speaking with a banking customer about possible uttering is not an intentional act to inflict emotional distress. The plaintiff has shown no connection between his conversation in the bank with defendant Randolph and his claims of emotional distress. Finally, the plaintiff has offered no evidence, other than conclusory statements, that his alleged emotional stress was severe and more than a person should be expected to endure.

Whether conduct can even be considered outrageous is a question of law. Id. As a matter of law, Givens has failed to show any conduct by Randolph that rises to the level of intolerable or atrocious. Therefore, he has failed to state a claim for intentional infliction of emotional distress. Randolph's motion for summary judgment as to this claim must be granted.

6. False Imprisonment

While the plaintiff did not identify false imprisonment as a claim in his complaint, Randolph addressed false imprisonment in her motion for summary judgment as a possible claim the plaintiff might seek. In order to establish a claim for false imprisonment in West Virginia, the plaintiff must establish: "(1) the detention of the person, and (2) the unlawfulness of the detention and restraint." Riffe v. Armstrong, 477 S.E.2d 535, 552 (W. Va. 1996) (citing Williamson v. Glen Alum Coal Co., 78 S.E. 94, 95 (W. Va. 1913)).

The plaintiff cannot produce any evidence that Randolph detained him. His conclusory statements in his deposition that she told him he could not leave the bank and that she escorted him out and unlocked the door is unsupported by the video surveillance evidence produced by Randolph. The plaintiff has failed to show any evidence that there is a genuine issue of material fact as to whether Randolph detained him at the bank. Accordingly, he has

failed to state a claim for false imprisonment and Randolph's motion must be granted as to this claim.

B.  Defendant Criswell's Motion for Summary Judgment

    1.  Title 42, United States Code, Section 1983 Claims

        a.  Prosecution without Probable Cause

Givens has alleged that Criswell knowingly made false and misleading statements to the prosecutor and knowingly issued a false arrest warrant, the result of which was the deprivation of Givens' liberty for several weeks without charge.  Givens has further alleged that once charges were brought, they were ultimately dismissed, thereby terminating the proceedings in Givens' favor.  While the plaintiff correctly notes that this Court did find that he stated a cognizable claim, the standard at the motion to dismiss stage is different from the standard at the summary judgment stage.  The plaintiff has presented no evidence to support his conclusory allegations as to this claim.

The right to be free from prosecution without probable cause implicates Fourth Amendment protections against unreasonable seizures.  See Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000) ("malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates some elements of the common law tort").  The Fourth Amendment to the United States Constitution provides, in relevant part: "The right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV, cl. 1. To state a § 1983 claim for violation of Fourth Amendment unreasonable seizure by prosecution without probable cause, a plaintiff must allege that criminal proceedings were initiated against him, that legal process forming the basis for such proceedings issued without probable cause, and that such proceedings terminated in the plaintiff's favor. See Brooks v. City of Winston-Salem, 85 F.3d 178, 183-85 (4th Cir. 1996). Unlike the common law tort of malicious prosecution, however, a § 1983 claim does not require a showing of malice. Id. at 184 n.5. Rather, the reasonableness of a seizure under the Fourth Amendment in a § 1983 action is to be "analyzed from an objective perspective." Id.; Lambert, 223 F.3d at 262 n.2.

The plaintiff has not provided this Court with any evidence in support of his claim for unreasonable seizure. He first cannot show that the arrest warrant was without probable cause. The plaintiff admitted in his deposition that nothing in the arrest warrant was falsified. The criminal complaint prepared by Criswell did however contain the wrong birth year for the plaintiff. The fact that Criswell wrote the year of birth as "1940" rather than "1970" does not create a genuine issue of material fact as to probable cause for the warrant. In his response to the motions to dismiss, the plaintiff argues that the incorrect year creates a

genuine issue of material fact as to identity because another person named Greg Givens could be responsible for the conduct in the underlying state action. This argument fails for several reasons. The plaintiff has not refuted that he is in fact the Greg Givens in the surveillance video from the bank. In fact, he admits to being in the bank the day of the incident. The plaintiff further admits that the warrant was directed to him. Finally, if a different Greg Givens was the actual person at Main Street Bank that day, this suit brought by this plaintiff would be dismissed because <u>that different</u> Greg Givens, not the one suing Criswell and Randolph, would be the person whose civil rights were allegedly violated.

After Criswell completed his investigation, he forwarded his report to the Ohio County Prosecutor's Office. The Prosecutor's Office returned a memo to him, which requested that Givens be charged with the state law crime of uttering. Criswell prepared a criminal complaint and then forwarded that complaint to the Ohio County Magistrate. The Magistrate then found probable cause to issue a warrant for the plaintiff's arrest. Criswell falsified no information. Probable cause existed for the plaintiff's arrest warrant.

The fact that Criswell did not read the plaintiff <u>Miranda</u> rights does not matter in this case. Criswell never spoke with the

plaintiff, and more importantly, Criswell never arrested the plaintiff.

The plaintiff also cannot show that the charges were terminated in his favor. As discussed earlier in this opinion, the prosecutor dropped the first charges in order to bring the charges before a grand jury. The state court dropped the subsequent state law charges after it found the plaintiff not competent to stand trial and unlikely to attain competency. This Court cannot say that the charges were terminated in the plaintiff's favor.

The plaintiff's claims of eyewitnesses do not create any genuine issues of material fact. The plaintiff has never identified an eyewitness to any event with the exception of his uncle, Dennis Givens and his mother, Carol Pizzuto.

The affidavit of Dennis Givens that the plaintiff attached to his response to the motions to dismiss does not refer to defendant Criswell. Thus, it has no impact on the decision to grant Criswell's motion for summary judgment.

Accordingly, there was no constitutional violation of unreasonable seizure by prosecution without probable cause. Therefore, Criswell does not need to defend the action and this Court grants Criswell's summary judgment motion as to the § 1983 claim for unreasonable seizure by prosecution without probable cause.

### b. Civil Conspiracy

This Court found above that Criswell and Randolph did not engage in a civil conspiracy to deprive the plaintiff of his constitutional rights. According to the deposition testimony and affidavits, there is no suggestion that there was an agreement to conspire between Randolph and Criswell. For the reasons discussed above, this Court grants Criswell's summary judgment motion as to the § 1983 claim for civil conspiracy.

### 2. State Statutory Immunity

The West Virginia Governmental Tort Claims and Insurance Reform Act provides that an employee of a political subdivision is immune from liability unless one of three situations applies: "(1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner, or (3) Liability is expressly imposed upon the employee by a provision of this code." W. Va. Code § 29-12A-5(b).

Criswell's investigation and report were done in the scope of his employment as a Wheeling police officer. While the plaintiff alleges that Criswell's actions were malicious, wanton, and reckless, he has provided this Court with no evidence to demonstrate his allegations. The plaintiff testified that the only false information in any of Criswell's reports is that the plaintiff's birthday read "1940" instead of "1970." As stated

above, this error does not create a genuine issue of material fact. Even if this Court concluded that Criswell did not have state law immunity for the state law claims, the plaintiff has not provided any evidence to create a genuine issue of material fact as to any claim against Criswell.

### 3. Abuse of Process and Breach of Express Duties

This Court set forth the elements the plaintiff must prove for the state law tort of abuse of process above. The plaintiff has presented no evidence that Criswell used the criminal charges against the plaintiff to accomplish some unwarranted purpose. Randolph called the Wheeling Police Department regarding possible crimes of uttering and forgery. After speaking with Randolph, he conducted his investigation and prepared his report. Turak states in an affidavit that the decision to prosecute the plaintiff was her decision alone. Criswell initiated the criminal process at the request of the prosecutor, which, as this Court discussed above, was based on probable cause.

Because the plaintiff has failed to establish the existence of any genuine issue of material fact and, as a matter of law, has failed to state a claim of abuse of process or breach of express duties, defendant Criswell's motion for summary judgment as to this claim must be granted.

4. <u>Malicious Prosecution</u>

This Court previously discussed the elements of malicious prosecution above. The plaintiff cannot present evidence to create a genuine issue of material fact as to this claim. As discussed above, the prosecution was with probable cause. Further, the prosecution did not result in the plaintiff's discharge as the state court declared him not competent to stand trial and ordered civil commitment proceedings. Finally, the plaintiff has shown no evidence that Criswell acted maliciously. As discussed earlier, even if Criswell intentionally wrote the wrong birth year in his report, it is not enough to show malicious intent and does not create a genuine issue of material fact.

Because the plaintiff has failed to establish the existence of any genuine issue of material fact and, as a matter of law, has failed to state a claim of malicious prosecution, defendant Criswell's motion for summary judgment as to this claim must be granted.

5. <u>Endangerment of and Injury to the Plaintiff</u>

As this Court pointed out earlier in this opinion, "Endangerment of and Injury to the Plaintiff" is not a recognized cause of action in West Virginia. The plaintiff has failed to produce any evidence sufficient to support this claim. Accordingly, this claim is dismissed for the plaintiff's failure to

show a genuine issue of material fact as to endangerment of and injury to the plaintiff.

      6.   <u>Infliction of Emotional Distress</u>

This Court previously discussed the elements of intentional infliction of emotional distress above. Here, the plaintiff has shown no evidence of conduct that an average member of the community would find outrageous. <u>Travis</u>, 504 S.E.2d at 428. The only error in the report, as admitted by the plaintiff, is the incorrect birth year. Incorrectly recording a year of birth on a report is not an intentional act to inflict emotional distress. The plaintiff has shown no connection between this wrong birth date and his claims of emotional distress. The plaintiff only provides conclusory statements that his alleged emotional stress was severe and more than a person should be expected to endure.

As a matter of law, Givens has failed to show any conduct by Criswell that rises to the level of intolerable or atrocious. Therefore, he has failed to state a claim for intentional infliction of emotional distress. Criswell's motion for summary judgment as to this claim must be granted.

C.   <u>Motion to Change Venue</u>

On June 18, 2010, the plaintiff filed a motion to change venue. He requests that his case be transferred to another district in the Fourth Circuit outside of West Virginia. The plaintiff believes that the media coverage of the case has

prejudiced the jury pool and that he is a controversial and polarizing figure in West Virginia. The plaintiff also contends in the motion that Magistrate Judge Kaull is biased. The plaintiff bases his motion on the Federal Rules of Criminal Procedure. Instead, this Court looks to the United States Code.

A motion to transfer a case to another venue is subject to the provisions of 28 U.S.C. §§ 1404(a) and 1391(a). Pursuant to 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought" where such transfer is made "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). For a civil action which is not based wholly on diversity of citizenship, 28 U.S.C. § 1391(b) answers the question of where such action "might have been brought":

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

This Court must deny the plaintiff's motion to change venue. First, this Court provided the parties with its tentative rulings prior to the plaintiff filing the motion to change venue.

Therefore, at the time of the filing of the motion, the plaintiff knew that this Court had vacated the trial, mooting the plaintiff's argument that he could not receive a fair trial because of publicity.  Further, the plaintiff does not provide any support for his allegation that he could not receive a fair trial.  Instead of attaching any media stories, the plaintiff attaches three affidavits, none of which cite any specific media coverage, but instead refer to "rumors and innuendo."  Further, pursuant to 28 U.S.C. § 1391(b), cited above, there is no other proper venue within the Fourth Circuit outside of West Virginia.  Finally, this Court finds that at this stage of the litigation, after two years of litigation and after this Court provided the parties its tentative rulings disposing of the case, a change of venue would unfairly prejudice the remaining defendants.

D.   <u>Motion to Appoint Counsel Pursuant to 42 U.S.C. § 1988</u>

On June 25, 2010, the plaintiff filed a motion for an appointment of an attorney pursuant to 42 U.S.C. § 1988.  He argues that because he has brought his civil action to vindicate affronts to his civil rights, he is entitled to appointment of counsel pursuant to 28 U.S.C. § 1988.  The plain language of 42 U.S.C. § 1988 does not authorize the appointment of counsel.  Instead, it provides that the Court may allow a prevailing party a reasonable attorney's fee as part of the costs.

A district court may appoint counsel to an indigent plaintiff in a civil action. This authority to appoint counsel, however, is discretionary, and there is no constitutional right to have appointed counsel in a civil action. 28 U.S.C. § 1915(e)(1) (2010). The United States Court of Appeals for the Fourth Circuit has limited a district court's discretion, stating that "it is well settled that in civil actions the appointment of counsel should be allowed only in exceptional cases." <u>Cook v. Bounds</u>, 518 F.2d 779, 779 (4th Cir. 1975). The court determines whether these circumstances exist by examining the characteristics of the claim and the litigant. <u>Whisenant v. Yuam</u>, 739 F.2d 160, 163 (4th Cir. 1984).

In support of his motion, the plaintiff states that this Court did not dismiss all of his claims at the motion to dismiss stage of the litigation. The plaintiff has not demonstrated exceptional circumstances. Accordingly, the plaintiff does not meet the threshold to allow this Court to appoint counsel on his behalf.

## V. <u>Conclusion</u>

For the reasons set forth above, defendant Randolph's motion to exceed page limit is GRANTED. Defendant Randolph's motion for summary judgment is GRANTED. Defendant Criswell's motion for summary judgment is GRANTED. Having so disposed of the defendants' motions for summary judgment, the plaintiff's and the defendants' motions in limine, the defendants' motions for joinder in motions

in limine, defendant Randolph's motion to dismiss, and defendant Criswell's motion to dismiss are DENIED AS MOOT. The plaintiff's motion for change of venue is DENIED. The plaintiff's motion for appointment of an attorney pursuant to 42 U.S.C. § 1988 is DENIED. It is ORDERED that defendant John Doe 1 be DISMISSED WITHOUT PREJUDICE as a defendant in this action. Accordingly, it is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

Should the plaintiff choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit, he is ADVISED that he must file a notice of appeal with the Clerk of this Court within 30 days after the date of the entry of the judgment order.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the pro se plaintiff by certified mail and to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter. Accordingly, the pretrial conference, jury selection, and trial are VACATED.

DATED:    July 22, 2010


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE